SCHOOL DISTRICTS vs. EDWARDS and another, imp.

DRAINAGE MONEY: SCHOOL DISTRICTS: RIGHT OF ACTION. *(1) How drainage money may be "applied to the support of common schools;" ch. 537 of 1865. (2, 3) Right of school district to sue on due-bill for such moneys improperly loaned from town treasury. (4) How the proportion of each plaintiff to be determined.*

1. Under sec. 17, ch. 537 of 1865, which provides that in a certain contingency drainage money in a town treasury "may be applied to the support of common schools, under the direction of the board of supervisors," the moneys directed by the supervisors to be applied to that purpose can be so applied only by *payment into the treasuries of the several school districts*, to be expended under the direction of the district boards, like other funds belonging to such districts.

2. Where, therefore, town supervisors regularly determined that the contingency of the statute had happened, and applied to the support of common schools in their town a certain sum of drainage moneys of the town, which had been loaned to defendants, and for which they had given their due-bill, and transferred to the school districts of the town said due bill, which the town treasurer, pursuant to their order, delivered to the treasurer of one of the school districts for the benefit of all, the funds when collected " to be divided among the districts in proportion to the number of scholars therein: " *Held*, that the districts had a right of action on the due bill, against the makers.

   [RYAN, C. J., is of opinion that the complaint might have been demurred to, on the ground that the rights of action of the several districts were several, and not joint.]

3. The money having been taken by defendants from the town treasury without lawful authority, neither they nor the supervisors can be heard to deny that it was *in the treasury* when such appropriation to the use of schools was made, so as to be the subject of appropriation for that purpose.

4. The fact that the several school districts are entitled to the money in proportions not ascertained, will not prevent them from maintaining the action; and *it seems* that, in case of a recovery, the court may direct the money to be paid into court, and, by reference or otherwise, may ascertain the due proportion of each district, and distribute the money accordingly.

   [RYAN, C. J., doubts the power of the court to do anything more in this action than render a judgment for the aggregate claim of the plaintiff districts.]

APPEAL from the Circuit Court for *Wood* County.

The action is by three school districts against the defendants *Edwards* to recover a sum of money in their hands alleged to belong jointly to the plaintiffs and another school district, which is made defendant to the action because its consent to be joined as a plaintiff could not be obtained. This is an appeal by the defendants *Edwards* from an order of the circuit court overruling a demurrer to the complaint. The only ground of demurrer assigned is, that the complaint fails to state a cause of action.

The complaint contains the following allegations: In 1872 the town of Centralia had in its treasury $3,000 of drainage-fund money, received by it pursuant to ch. 537, Laws of 1865, and the board of supervisors of that town loaned $850 thereof to the two defendants *Edwards* (one of whom was then a member of the board), who gave the town treasurer their due-bill therefor. The money has not been repaid.

In March, 1874, the town board of supervisors determined that the money so loaned to the appellants was not needed for any of the other purposes specified in sec. 17 of the act of 1865, and applied the same to the support of common schools in their town. The averments in that behalf are as follows: "The board of supervisors of said town of Centralia, having determined that the said drainage funds so let and loaned to the said *John Edwards* and *William H. H. Edwards* as aforesaid, the said due-bill taken therefor being then in the hands of the treasurer of said town, and remaining wholly unpaid, were not needed for the purpose of draining and reclaiming the swamp and overflowed lands in said town, nor for the construction of roads and bridges therein, applied the said sum of eight hundred and fifty dollars of drainage moneys, represented by the said due-bill of *J. Edwards & Co.*, to the support of common schools of said town of Centralia, and duly assigned and transferred to the four school districts of the town of Centralia hereinafter described, the said sum of eight hundred and fifty

dollars of drainage funds, and the due-bill of said *J. Edwards & Co.*, representing the same, together with all the right, title and interest of said town therein; the said funds, when collected and received, to be divided among the districts in proportion to the number of scholars therein; and ordered and directed the treasurer of said town of Centralia, to deliver to the treasurer of school district number one of the town of Centralia, for the use and benefit of said four school districts, the said due-bill of *J. Edwards & Co.* hereinbefore described; and that, pursuant to said order, the said town treasurer delivered said due-bill to the treasurer of said school district number one, in whose hands the same still remains."

When such appropriation was made, there were four school districts in the town of Centralia, numbered respectively 1, 2, 3 and 4. Afterwards that town was disorganized and vacated, and the town of Port Edwards, comprising the same territory, was duly organized. At the same time the school districts which are parties to this action, became respectively the successors of such original districts as follows: "Said school district number one of the town of Centralia then became and now is school district number one of the city of Centralia; and school district number two of the town of Centralia then became and now is school district number one of the town of Port Edwards; and said school district number three of the town of Centralia then became and now is joint school district number three of the city of Centralia; and said school district number four of the town of Centralia then became and now is school district number two of the town of Port Edwards."

Judgment is demanded for the $850 so loaned to the appellants, and interest thereon, to be divided between the four districts in the proportions stated in the complaint.

For the appellants, there was a brief by *Powers & Briggs*, and oral argument by *Mr. Powers:*

1. The statute (sec. 17, ch. 151 of 1869) provides that any portion of the town drainage fund, not needed for its original

purpose, " may be *applied* for the support of common schools *under the direction of the board of supervisors.*" This authorizes the supervisors to *apply* such surplus fund, that is, to use it themselves, for the support of common schools. It does. not authorize the appropriation of any portion of the fund to any school district in such a manner that the money would become the property of the district, or would pass into the hands of, or be expended by, the district officers. The board of supervisors have many duties to perform relating to common schools (R. S., pp. 164–6, 181, 182, 192), and it is clearly the intention of the law that the money shall remain in the town treasury, under the control of the supervisors, until paid out upon their order directly to the persons entitled to receive it, without the intervention of the district or its officers. The money is the money of the town, and a debt created against it is the debt of the town. *Hohl v. Westford*, 33 Wis., 323. Any action of the supervisors, therefore, attempting to transfer the fund to the school districts, so that the same should become their property, was void. 2. The money was not in the town treasury when the supervisors attempted to transfer it to the districts. By the tort of the supervisors, of the town treasurer, and of the appellants, the money had passed out of the treasury into the hands of the appellants. The memorandum of the amount of moneys so unlawfully taken, left by the appellants in the hands of the treasurer, is evidence of the tortious transaction, but it is not negotiable paper, nor a contract, nor has it any similarity to a bank certificate of deposit; nor is the action upon that memorandum, or upon contract; but it is one sounding in tort. The appellants cannot, of course, set up their own tort to escape liability; nor do they attempt it. They are liable to the town for the money and interest; but it is not competent for the town to make the school districts its agents to collect the money embezzled by its officers and divide it among themselves; nor was it competent for the districts to acquire such a claim from the town, by gift or oth-

erwise, and enter into litigation to enforce it; nor would a recovery in this action be any bar to a recovery by the town. 3. If plaintiffs recover in this action, to whom shall appellants pay the money — to either one of the plaintiffs, or to the defendant school district, which is alleged to have an interest in the money, or to the plaintiffs' attorney? And, when paid, what is to be done with it? The complaint alleges that it is to be divided among the districts in proportion to the number of scholars therein. But by whom is it to be divided? Is the court to take a census of the scholars, and by its judgment make the division? Or is the plaintiffs' attorney to do this? And when paid over to plaintiffs' attorney, is it to be applied under the direction of the board of supervisors?

*Geo. R. Gardner*, for the respondents, contended, 1. That school districts and their officers are the agents created by law for the purpose of carrying on the schools and expending all moneys applicable to their support, whether arising from taxation, or from the school fund, or from drainage funds received from the town. The law evidently contemplates that *all funds* applicable to the support of common schools shall be paid over to the school-district treasurers; that they then become the property of the several school districts; and that the only manner in which they can be paid out is on the order of the clerk and director. Tay. Stats., 551, § 39, and 557, § 59. On the other hand, neither the towns nor their supervisors have authority to expend money directly for the support of common schools. They have no power to hire, discharge or pay teachers, or to contract or pay for the building of school-houses; but all these powers are entrusted to the districts and their officers. That clause of the drainage-fund act which provides that the fund may be applied to the support of common schools under the direction of the board of supervisors, does not change or modify the general law regulating the government of the common schools. It does not authorize the town supervisors to exercise any of the powers conferred upon

school districts or their officers. The supervisors, therefore, can apply funds to the support of common schools only by transferring such funds to the districts themselves, to be disbursed by the district officers as provided by law. 2. The supervisors, having the power to apply and appropriate this fund itself to the school districts, had power to transfer to them a less perfect property in the same funds, to wit, this due-bill of the appellants, and the title of the town to the money which it represented; and in like manner the districts had the right to receive this less perfect property; the greater power or right including all lesser ones. Again, independently of the statute, the school districts may receive the notes of third persons in the transaction of their ordinary financial affairs, and, until such notes are impeached, or some defense made against them, are under no obligation to show how they came by them. *Brewster v. Colwell*, 13 Wend., 28. Again, if the town officers had deposited this money in a bank, taking a certificate of deposit therefor, and had then appropriated it to the districts, and assigned the certificate of deposit to them, could not they have maintained an action against the bank on the certificate? In this case there was a loan made to the appellants, which was due whenever demanded. True, the complaint shows a fraudulent conversion of the money; but the action is not based upon the tort, but upon the due-bill and upon the appellants' implied contract to refund the money. The due-bill is not void. *Comm'rs of Highways v. Peck*, 5 Hill, 215; *B'd of Sup. v. Hill*, 42 Wis., 59. But if the due bill is void, still, (1) The appellants cannot take advantage of their own wrong and attack its validity in this action. *F. & M. Bank v. D. & M. Railroad Co.*, 17 Wis., 372; *Chester Glass Co. v. Dewey*, 16 Mass., 94; *Bissell v. Railroad Co.*, 22 N. Y., 258; *Parish v. Wheeler*, id., 494; *State of Indiana v. Woram*, 6 Hill, 37; *State v. Shaw*, 28 Iowa, 67. (2) They were liable to the town as for money had and received for its use (*N. W. Union Packet Co. v. Shaw*, 37 Wis., 655;

*Thomas v. Sowards*, 25 id., 631; *Paul v. Kenosha*, 22 id., 266; *Roll v. Raguet*, 4 Ohio, 400; *Brown v. Timmany*, 20 id., 81; *Greenwood v. Curtiss*, 6 Mass. 381; *Sampson v. Shaw*, 101 id., 145; *Tappenden v. Randall*, 2 Bos. & Pul., 467; *Aubert v. Walsh*, 3 Taunt., 277; *Busk v. Walsh*, 4 id., 290); and these districts, by virtue of the assignment, stand in the place of the town. 3. If plaintiffs are the owners of this claim, it does not concern the appellants what the several rights and interests of the plaintiffs may be.

Lyon, J. The action is to recover money in the hands of the appellants, which, it is alleged, belongs jointly to the school districts, parties to this action. The demurrer is general; hence we have no question on this appeal of defect of parties, or misjoinder of causes of action. If the facts stated in the complaint show that the money belongs to those districts, the demurrer was properly overruled. The objections to the sufficiency of the complaint will be briefly noticed in their order.

1. The act of 1865 (ch. 537, sec. 17) provides that in a certain contingency drainage money in the town treasury " may be applied to the support of common schools, under the direction of the board of supervisors." The learned counsel for the defendants argue, that money so applied does not belong to the school district for the benefit of which it is applied, and does not go into the district treasury, but must be applied, that is, expended, directly by the supervisors, without the intervention of the school district or its officers.

We think this is an incorrect construction of the statute. The general law of the state prescribes the processes, through the agency of school districts and their officers, for organizing, maintaining and conducting the common schools. Within legal limitations, the control of the district board over the district school must necessarily be exclusive. There is not room for two jurisdictions acting independently of each other. If

the construction of the statute contended for be adopted, the board of supervisors which applies drainage money to the support of a district school, may discharge a teacher employed by the district board and employ another, and may control the management and economy of the school while expending the money. Of course, the legislature never intended that result, but manifestly did intend that the money should be paid into the district treasury and expended under the direction of the district board, as other funds belonging to the district are paid in and expended. The true meaning of the statute doubtless is, that the money shall be applied to the support of common schools by and through the usual authorized agencies, if, on the happening of the contingency therein mentioned, the board of supervisors shall so direct.

In this case the complaint shows a regular determination that the contingency of the statute has happened; and it shows further that the proper board of supervisors has applied the money to the support of common schools by appropriating it to the school districts of the town. We cannot doubt that the money belongs to the school districts to which it was thus appropriated, and that those districts may recover the same of any person who may have it in his hands.

2. We think there is no force in the objection that the appropriation was not lawfully made, because, when made, the money was not in fact in the town treasury. The money was taken from the treasury by the appellants (one of them being then a supervisor) without lawful authority, and was never returned. It was a most flagrant breach of trust on the part of the supervisors to loan or borrow the public funds, and neither they nor any other person *in pari delicto* with them can be heard to say that the money was not in the treasury when appropriated, if it becomes necessary for any person justly entitled to it to allege that it was there. If not then in the treasury, it ought to have been, and probably would have been there but for a gross violation of official duty to which the appellants

were parties. The board of supervisors making the appropri-
ation might lawfully assume that the money would be at once
replaced by the appellants where it belonged, and treat it as
money actually in the treasury. *Hohl v. The Town of West-
ford*, 33 Wis., 323. Were the objection available under any
state of facts, it is not available to these appellants under the
facts stated in the complaint.

3. The fact that the several school districts are entitled to the
money in unascertained and probably in unequal proportions,
is no impediment to this action. That is a matter between the
districts, with which the appellants have no concern. It is
sufficient for the purpose of maintaining the action, that they
are jointly entitled to the money claimed. It may be remarked,
however, that no good reason is perceived why the court may
not in this action (if there is a recovery) direct the money to
be paid into court, and by reference or otherwise ascertain the
due proportion of each district, and distribute the money
accordingly. The last official enumeration of children in the
several original districts, preceding the appropriation, will
probably furnish a sufficient basis for ascertaining the propor-
tion of each; or the share of each district may be ascertained
by stipulation between them.

The foregoing views dispose of all the objections to the
sufficiency of the complaint necessary to be noticed, and bring
us to the conclusion that the complaint states a cause of action
in favor of the school districts against the appellants.

RYAN, C. J. I cannot doubt that the rights of action of the
several school districts are several, not joint; or that, had the
demurrer assigned the improper joinder of several causes of
action, it should have been sustained. But the demurrer as-
signs the single ground that the complaint does not state facts
sufficient to constitute a cause of action. This is apparently a
waiver of the true ground of objection.

Had the defendant school district demurred on the ground

that the complaint does not disclose a good cause of action against it, it is difficult to perceive why it should not have been sustained.    I do not understand why it was made a defendant.

And I doubt very much whether in this action the court below can do anything more than render judgment for the aggregate claims of the plaintiff school districts.    The action is at law, not in equity.

*By the Court.* — Order affirmed.