WILLIAM A. FRYE *vs.* MAINE CENTRAL RAILROAD COMPANY.

Penobscot. Decided September 5, 1877.

*Damages.*

"Frye agrees to run a stage line from Dexter to Greenville, for the conveyance of travel coming from or going to the Maine Central Railroad; the time of leaving and arrival to be as follows:— . . . The Maine Central Railroad Company, in consideration of the above, agrees to give Frye the exclusive right of ticketing between Dexter and Greenville for five years from July 1, 1872, at rates now being settled by." Annexed to the plaintiff's agreement was a table of time of leaving and returning to Dexter, Greenville and Kineo.

*Held,* 1. The tenor, terms and subject of the contract between these parties, and the business carried on under it are not such that the plaintiff is entitled to the damages which he suffered in the steamboat business between Greenville and Kineo by reason of its breach. The transportation of the passengers by the boat was not so connected with that stipulated for in the contract by the reference thereto in the contract itself or by the natural course of business, that the profits accruing on that part of the line, and the damages likely to result there, as well as between Dexter and Greenville from a breach of the contract can be deemed to have been in the contemplation of both parties at the time they made the contract.

*Held,* 2. Upon such a contract as this, the measure of damages is not the difference between what plaintiff was to receive as the contract price for carrying the through passengers and what it would actually or probably cost to carry each passenger without reference to any other contract or any other business, but is the profits which the plaintiff was in fact able to make upon their transportation, taking into account the situation and use of his property in the transportation of other passengers, and the carrying on of other business over the same route.

ON EXCEPTIONS.

ASSUMPSIT.

The jury returned a general verdict for the plaintiffs for $7,758.50, with special findings of damages by reason of wrongful termination of contract between Dexter and Greenville, $5,424; for wrongful termination of contract between Greenville and Kineo, $2,260; balance on account, $74.50.

The defendants alleged exceptions, which in the opinion appear.

*F. A. Wilson & C. F. Woodard,* for the defendants.

*D. D. Stewart,* with *A. Sanborn,* for the plaintiff.

BARROWS, J. The plaintiff, having been engaged since 1868 in running a stage between Dexter and Greenville, carrying railroad passengers on through tickets as well as local passengers, and having a contract for carrying the mail which was to expire July 1, 1873, and being agent for the Eastern Express Company, from which business and the transportation of freight he realized considerable sums annually, and being the owner of stage property on the line to a considerable amount, and having purchased, in the fall of 1871, a steamboat to run on the lake between Greenville and Mt. Kineo, on the 18th of June, 1872, made a written contract with the defendants whereby he agreed "to run a first class stage line from Dexter to Greenville by the most direct line for the conveyance of travel coming from or going to" the defendants' railroad, according to a certain time table, the details of which were inserted in the contract and made subject to changes in the time table of the R. R. Co., in consideration of which the defendants agreed to give him "the exclusive right of ticketing between Dexter and Greenville for the term of five years from the first day of July, 1872," at a fixed rate. The time table provided that he should leave Dexter at a certain hour, arrive at Greenville at a certain time, and leave Greenville for Kineo, and arrive at Kineo at the times mentioned in the schedule.

"Round trip tickets were issued by the defendants from Boston and points east of Boston to Kineo and return by Frye's stages from Dexter and by steamboat." The plaintiff was to receive $2.50 per passenger each way for passengers carried on through tickets. Dissatisfaction arose between the parties. Defendants claimed that there was a failure to perform on the part of the plaintiff, and notified him, May 5, 1873, that for that reason they had contracted with other parties to do the work from July 1, *prox.*, and that he must discontinue operations under the contract at that time. His contract for carrying the mail expired at that same date. Another party secured it for the next four years, and he lost the express business because by the rule of the express company that was always given to those who had the mail contract, to whom also the defendants under a contract bearing a

general similarity to the one previously made with the plaintiff, gave the exclusive right of ticketing between Dexter and Greenville. Hence this suit.

The jury, under instructions of which the defendants do not complain, found that the defendants had no justification for rescinding the contract. There is no motion to set aside the verdict as against evidence, nor because the damages were excessive. We are to presume that the verdict settles the rights and obligations of the parties correctly, unless there was substantial error in certain instructions given by the presiding judge upon the question of damages.

The defendants claimed (1) that the contract did not extend to business between Greenville and Kineo and that no damages for loss of business and profits between those places could be allowed, and (2) that the measure of damages was the difference between what plaintiff was to receive, which was $2.50 each, for carrying the through passengers and what it would actually or probably cost to carry each passenger, and this without reference to any other contracts or any other business. The judge ruled *pro forma* that the contract did cover the distance between Greenville and Kineo, and instructed the jury to find specially what amount of damage, if any, the plaintiff had sustained between Greenville and Kineo, if the defendants had wrongfully and without sufficient cause terminated the contract, and include it with the other damages in their general verdict; all which the jury did, thus adding the sum of $2,260 to their verdict.

Touching the second position taken by the defendants, with regard to the assessment of damages, the exceptions state that the jury were instructed as follows by the presiding judge: "What was the plaintiff to do? Of what was the plaintiff deprived? The plaintiff is deprived of the exclusive right of ticketing between Dexter and Greenville for the term of four years from July 1, 1873. The plaintiff had the exclusive right to transport passengers from Dexter to Greenville at a specified rate of compensation. Now the loss the plaintiff has sustained is the profits upon the carriage of passengers between the points indicated." The judge then referred to the situation of the plaintiff with

regard to his preparation and equipment for the transaction of this business in connection with his other business, as we have above seen, remarking among other things that "the plaintiff had obviously the right and the expectation of passengers from other sources, such as way passengers, express profits, &c. Now bearing this in mind, what are the elements of damage? The number of passengers; the price of carriage; the cost of carriage; if profits, the gains which would have been made are the losses which have been sustained. If Frye was so situated that he in connection with other business at little relative cost could carry passengers cheaply, more cheaply than anybody else, it is his good fortune of which he is entitled to reap the benefits. The measure of damages then is the loss of profits which would have been made by carrying the passengers under the contract as stipulated in the contract."

The stenographer's report of the charge, which comes up with the exceptions, shows that the judge further charged the jury that "while the bargain of itself might not be valuable to him, yet it might be of value to him in connection with his other business situated as he was;" that, upon the evidence produced, "the loss upon the coaches and horses, if sold, would not be an element of damage;" nor would the loss of the plaintiff in attempting to carry on the contract after notice from the defendants that they had terminated it; nor the loss of the way travel by means of the competing line to which the defendants transferred their contract. "The only loss is his being deprived of the carriage of passengers from Dexter to Greenville and back. That is all the company agreed to give him; it is all he has lost. . . . The measure of damages is just what he has lost by not being permitted to perform the contract which he made; that is what the gains would have been after deducting the expenses. Whatever the cost was, that should be deducted from the receipts whatever that was; and the balance is the gain; and the gain only is that to which he is entitled. He is entitled likewise to interest, not as interest, but by way of damages from the date of the writ."

We think the defendants have no just cause to complain of the substantial overruling of the second position which they took.

If, by reason of its connection with the other business in which he was engaged, the plaintiff could transport passengers to and from the defendants' cars without largely increasing his necessary outlay, the legitimate profits of the contract to him were proportionally increased, and the wrongful termination of it by the defendants, which the jury have found, necessarily occasioned to him a greater loss; and the matters to which reference was made by the presiding judge were so obvious in their nature that it cannot but be supposed that both parties entered into the contract with an eye to them as existing facts. The contract did not contemplate the exclusive devotion of the plaintiff's time and property to the transportation of the defendants' passengers, nor would there be any propriety in measuring the plaintiff's profits in the performance of the contract and his consequent loss in being deprived of it by the standard that the defendants claimed to set up. The nature of the contract was such that its terms would inevitably be affected by the other contracts and business to be carried on in connection with it; and the claim that damages for its breach should be estimated "without reference to any other contracts or any other business" cannot be sustained.

The defendants complain particularly of the reference made in this connection by the presiding judge to the steamboat business, mail contract, express profits and way passengers, and claim that the jury were liable to be misled by the mention which the judge made of them, inasmuch as the mail contract and the express business ceased to be sources of income to the plaintiff at the same time that the defendants rescinded their contract with him. But they existed during the year, from the operations and results of which the jury were called upon to calculate the damages for the remaining four years over which the defendants' contracts extended; and their existence or non-existence had a bearing upon the amount of profits which the plaintiff could realize from the carriage of passengers under this contract. The jury could hardly fail to remember the time when they ceased, or to infer, from the significant inquiry put by the judge, whether the contract would be of any value to the plaintiff or of little value unless taken in connection with the situation of other property,

that when they ceased it would tend to diminish the profits of the plaintiff upon the carriage of passengers under the contract, and the loss which he sustained by the defendants' breach of the agreement. Or if there was danger of misrecollection or misapprehension by reason of the manner in which the judge alluded to such a piece of evidence, it was the duty of counsel to call the judge's attention to it on the spot in order that it might be rectified. We find in it no just ground of exception.

Whether the contract was such that the plaintiff was entitled to damages for the loss of passengers by his boat from Greenville to Kineo, is a question not so readily answered.

A majority of the court think that, inasmuch as by its terms the defendants stipulated to give the plaintiff an exclusive right only between Dexter and Greenville, and as he in terms bound himself only to furnish the transportation between these points, no failure on his part, to arrive at or leave Kineo at the prescribed hours or to furnish suitable transportation thither, could be imputed to him as a breach of his contract with them, and that it' is equally beyond the scope of any legitimate rule of construction to hold that the reference in the contract to the hours of reaching and leaving Kineo carried with it an agreement, on the part of the railroad company, to give the plaintiff the exclusive right of transportation over that part of the route.

Nor is the majority of the court prepared to hold that the loss between Greenville and Kineo falls within the principles that authorize and regulate the recovery of consequential damages in actions, upon contract, or that it can properly be said that it arose according to the usual course of things from the breach of the contract itself, or was such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach of it. They are of the opinion that the profits which the plaintiff might make on that part of the route must be excluded under the rule laid down in *Fox* v. *Harding*, 7 Cush. 516, 522, as profits accruing from another independent and collateral undertaking, and therefore too uncertain and remote to be taken into consideration as part of the damages occasioned by the breach of the contract in question.

As those damages were separately assessed, it will not be necessary to send the case to a new trial, if the plaintiff will remit the amount added to his verdict by the erroneous ruling.

> *Exceptions sustained, unless the plaintiff remits $2,260 as of the date of the verdict. If he so remits, exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.