652.   ALBANY PHOSPHATE COMPANY v. HUGGER BROS.

1. The rule of the common law which forbade the filing of contradictory pleas does not prevail in this State. Under the provisions of the Civil Code, § 5047, a defendant may rely at one and the same time on a demurrer, a plea in bar, and a plea in discharge. Pleas, however conflicting, do not oust each other.

(a) The admission by the defendant of a prima facie case in the plaintiff, in order to get the opening and concluding argument before the jury, whether made in the original answer or by amendment, does not estop the defendant from complaining of prior rulings on demurrer, to which exceptions pendente lite have been filed.

2. Where the contract does not prescribe otherwise, the certificate of an architect as to the satisfactory completion of a building need not follow any particular form.

3. Where a contract has been broken, the law seeks to give such damages as will put the injured party in the same position as if the contract had been kept; subject, however, to the exception that damages which are speculative, consequential, or of a nature not reasonably within the contemplation of both parties as a natural and probable result of a breach, are not recoverable.

(a) Where a builder agrees to erect a building within a certain time, knowing that it has been leased from the time named for its completion, and breaks the stipulation as to time, he is ordinarily liable to the owner for loss of rent, but not for loss of interest on the capital invested in the building, nor for damages paid by the owner to a lessee in accordance with a stipulation of the lease contract, as to which the builder had no knowledge.

4. Where an amendment to pleadings has been, in term, duly allowed over objection by demurrer, it is not, after the term has expired, within the power of the court to revoke the order of allowance, and on motion strike the amendment; but harmless error in this regard will not authorize the grant of a new trial.

5. A juror over sixty years old is exempt, but not disqualified to serve in a civil case. His exemption is a privilege, but not a disqualification.

6. "It has long been the rule in this State, when the admissibility of evidence is doubtful, to admit it and leave its weight and effect to be determined by the jury."

7. The charge of the court was accurate, fair, comprehensive of the issues in the case, and free from material error. The verdict is amply supported by the evidence; and no reversible error appears.

Complaint, from city court of Albany—Judge Crosland.   June 26, 1907.

Argued November 12, 1907.—Decided September 30, 1908.

Hugger Brothers contracted with the Albany Phosphate Company to build a large plant for the manufacture of acid phosphate and fertilizers, according to certain plans and specifications made by an

architect and engineer, P. S. Gilchrist. The contract reads as follows: "This agreement, made and entered into this 17th day of May, 1905, between the Albany Phosphate Company, of Albany, Georgia, a corporation organized and existing under the laws of the State of Georgia, hereinafter called the 'company,' party of the first part, and Hugger Brothers, of Columbia, Tenn., hereinafter called the 'builder,' party of the second part, witnesseth: First: Said builder hereby agrees with said company that he will well and substantially build the fertilizer buildings near the city of Albany, according to the plans and detailed specifications furnished by Peter· S. Gilchrist, Charlotte, N. C.; said work to be executed in the most sound, substantial, and workmanlike manner, and with the best materials of their respective kinds, the cost of which (except the Glover tower frame), with all iron work, nails, scaffolds, ladders, implements of every kind, is to be borne by said builder, for the sum of forty thousand and five hundred dollars, to be paid to the said builder by the said company. Second: The builder shall be paid in the following manner; that is to say, when Peter S. Gilchrist, architect and engineer, shall have certified that the work has been completed to his satisfaction, and that the builder has complied with the conditions of the aforesaid plans and specifications, then said company agrees that when said certificate shall have been presented to it, to pay the aforesaid sum of $40,500; payments to be made as is customary during construction, namely, eighty [sic] per cent. every thirty days, as the work progresses, the balance on completion. In no case is the payment to be made within twenty per cent. of the work and materials on the ground. Third: Any alterations or changes that the company may wish to have made during the progress of the work shall be done by said builder in accordance with the wishes of said company, and the difference in said cost, if any, shall be approved by P. S. Gilchrist, engineer, before settlement shall be made. In no case shall the charges be greater in proportion to the work done than the work according to the original plans would have cost. Fourth: The said builder further agrees with the said company that he will finish the whole of said work according to the full intent and meaning of the said plans and specifications, and to the satisfaction of P. S. Gilchrist, engineer, within one hundred and twenty working days, and will have ready for said company the acid chamber building within forty working

days for the lead work to be done, and will have the fertilizer mill building ready for machinery to be placed therein within seventy working days from the time the railroad tracks are ready to receive material. The same builder will be responsible to the company for any delay caused by his failure to complete the building according to contract." (Signed by the parties.)

The builders, claiming to have finished the buildings according to contract, filed suit for an alleged balance due of $9,366.44. The defendant, claiming that the builders had delayed the completion of the building for a period of three months, whereby it had suffered various items of damage, contended for a recoupment therefor. The items of damage claimed were as follows: (1) the estimated profit on the output of the factory during the period of delay, amounting to $36,450; (2) the rental value of the plant during this same period, amounting to $9,000; (3) the interest on the sum invested for the period of delay, amounting to $3,500; and (4) the amount which the defendant had been compelled to pay the lessee of the building in accordance with its contract with said lessee, amounting to $9,053. The court struck the portions of the answer alleging the third and fourth items of damage as above; to which rulings the defendant excepted pendente lite. The court also overruled general and special demurrers to the plaintiffs' petition; to which rulings the defendant likewise preserved exceptions pendente lite. The trial resulted in a verdict in favor of the plaintiffs, for $7,666.44. The defendant moved for a new trial, which was denied. The bill of exceptions complains of the rulings pendente lite, and also of the overruling of the motion for a new trial. The further facts necessary to an understanding of the points thus raised are stated in the opinion.

*Olin J. Wimberly, Wooten & Hofmayer,* for plaintiff in error.
*Jesse W. Walters & Sons,* contra.

RUSSELL, J. (After stating the foregoing facts.)

1. After the court had made the several rulings on demurrer, adverse to the defendant, to which exceptions pendente lite were preserved, and before the introduction of any testimony at the trial, the defendant admitted a prima facie case in the plaintiffs, in order to obtain the opening and concluding argument before the jury; and, in the trial of the case, it availed itself of this right. The defendants in error contend that this court should not consider

any of the exceptions pendente lite, for the reason that this admission is a waiver of the defendant's right to complain thereof, estopping and precluding it from complaining of any adverse ruling made prior to such admission. So far as our investigation has gone, the exact point thus raised has never been passed upon by this court or by the Supreme Court; and its proper determination necessitates a consideration of the basis of the right to open and close, and of the nature of the admission which the defendant must make in order to deprive the plaintiff thereof. The reason back of the rule which gives this right to the plaintiff in the first instance is that he has the burden of carrying the affirmative of the issue. The law recognizes that it is harder to build than it is to tear down, and so seeks to do even-handed justice by giving him who has the harder task—the burden of proof as to the issue between the litigants—the advantage of the argument. Generally the issue is the truth of the facts alleged in the plaintiff's declaration; and the right to open and close the argument belongs by right to him. But if the defendant admits those facts which show a prima facie case in the plaintiff, and seeks to avoid or defeat such prima facie case by the introduction of new facts by way of an affirmative defense, as to such a defense he has the burden of carrying the affirmative of the issue, and the law gives him the right to open and close the argument before the jury. For example, where the defendant at common law pleaded the general issue, the right to open and close belonged to the plaintiff; but if the defendant pleaded by way of confession and avoidance, the right to open and close belonged to him, for the issue between the parties was not then the truth of the facts alleged in the plaintiff's declaration (they being admitted), but the truth of the new matter alleged in the defendant's plea. Shipman's Common Law Pleading, 163, 181; Andrews' Stephen on Pleading, 148, 229; 15 Enc. Plead. & Prac. 187, 190; *Augusta Factory* v. *Barnes,* 72 *Ga.* 217 (63 Am. R. 838); *Seymour* v. *Bailey,* 76 *Ga.* 338. The admission must extend to every fact necessary to show, without proof, a right in the plaintiff to recover on his case as laid in the petition. Consequently, the issue between the parties will not be as to the facts admitted, but as to new facts introduced by the defendant by way of confession and avoidance. *Crankshaw* v. *Schweizer Mfg. Co.,* 1 *Ga. App.* 363 (58 S. E. 222) ; *Augusta Factory* v. *Barnes,* supra;

*Abel* v. *Jarratt,* 100 *Ga.* 732 (28 S. E. 453) ; *Reed* v. *Sewell,* 111 *Ga.* 880 (36 S. E. 937) ; *Massengale* v. *Pound,* 100 *Ga.* 770 (28 S. E. 510) ; *Brunswick R. Co.* v. *Wiggins,* 113 *Ga.* 842, 846 (39 S. E. 551, 61 L. R. A. 513). The admission is conclusive upon the defendant, and he can not thereafter deny the facts admitted, nor withdraw the admission. *Fisher* v. *Jones Co.,* 108 *Ga.* 490 (34 S. E. 172) ; *Harris* v. *Amoskeag Lumber Co.,* 101 *Ga.* 641 (29 S. E. 302).

There is no real inconsistency in urging a general demurrer and in admitting a prima facie case for the purpose of obtaining the opening and conclusion. The one relates to the sufficiency of the pleadings as a matter of law; the other to the establishment of the allegations of the pleadings as a matter of fact. At the demurrer stage of the case the petition must present a case which, upon its admitted facts, entitles the plaintiff to recover as a matter of law; on the trial the plaintiff prima facie recovers if he prove, or if the defendant admit, those facts which he has alleged in his petition, irrespective of their legal sufficiency to constitute a cause of action. Our code expressly recognizes the right of a defendant to demur, plead in bar, and plead in discharge, without legal objection. When, therefore, in the present case, the defendant pleaded in discharge, by way of confession and avoidance (for that is the effect of the plea), its rights arising under the demurrer were not waived, nor was it estopped from insisting thereon. When the demurrer was overruled, the decision of the judge became the law of the case until reversed; the defendant had the right to give his case direction accordingly, and if the truth of the transaction, viewed in the light of the court's ruling, threw the burden of proof on the defendant, it was entitled to the opening and conclusion of the argument. *Crankshaw* v. *Schweizer Mfg. Co.,* supra; *Stiles* v. *Shedden,* 2 *Ga. App.* 317 (58 S. E. 515).

2. The general demurrer was based on the ground that the petition did not allege that the certificate of the architect had been obtained as prescribed by the contract; and that no reason was alleged why said certificate had not been obtained. Such an allegation is a condition precedent to an action on the contract. *Elmore* v. *Thaggard,* 130 *Ga.* 702 (3) ; Lloyd on the Law of Building, §20. It will be noted, however, that the contract does not prescribe any particular form of certificate, and no particular form

is made necessary by law. Lloyd, supra, §19; Kirk *v.* Bromley Union, 2 Phill. 640, 17 L. J. (N. S.) Ch. 127. "When an architect certifies that when some slight additions should be made to the work it would be acceptable, and it appears that these additions have been made, and on notice thereof no further objections are made, it will be a sufficient acceptance." Mills *v.* Weeks, 21 Ill. 561. The certificate in the present case is as follows: "I have looked over the buildings and accepted same on your behalf, with the exception of the skylights on the fertilizer building, as some of these leak. Mr. Hancock is to go over them to-morrow systematically, and repair any broken putty joints and have all putty joints painted. When this is done I think everything will be satisfactory. Peter S. Gilchrist." This certificate shows that the architect was satisfied that the builder had substantially complied with his contract; and there is no contention that the defects pointed out were not remedied. It does not appear, therefore, that the court erred in overruling the general demurrer.

3. The question presented by the striking of the defendant's answer relates to the proper measure of damages. The portions of the answer which the court struck alleged that the defendant had been damaged because of the alleged delay of three months: (1) in a sum equivalent to the interest on the amount invested in the factory; and (2) in the sum of $9,053, which the defendant had been forced to pay under the following circumstances: Prior to the time fixed in the building contract for its completion, the defendant had leased said plant to the Tennessee Fertilizer Company, which company had a similar plant at Montgomery, Alabama, and the lease contract provided that if the building at Albany was not completed by the day named in the building contract for its completion (from which date the lease was to begin), the defendant would pay its lessee the difference in freight rates between Montgomery and Albany, to make good the deficiency in output, due to the non-completion of the building in time to manufacture a full season's output at Albany. It was further averred, in this connection, that at the time the building contract was entered into, and during the period of its construction, the plaintiffs knew that the plant had been leased to the Tennessee Fertilizer Company.

The law always seeks to give a remedy commensurate with the

injury. "The injured party is to be placed, as near as may .be, in the situation he would have occupied if the wrong had not been committed." Wicker *v.* Hoppock, 6 Wall. 98; Beale's Cases on Damages, 486. Accordingly, where a promise has been made and broken, the promisee ought to be put as near as may be in the same situation he would have been in if the promise had been kept. Roper *v.* Johnson, L. R. 8 C. P. 167; Brown *v.* Muller, L. R. 7 Exch. 319. On the other hand, where such damages are so remote, consequential, or speculative, that they can not reasonably be said to have been in the contemplation of the parties as a result of a breach of the contract, the law does not allow their recovery; for this would be unjust to the promisor. Civil Code, §3799; *Stewart* v. *Lanier House Co.,* 75 *Ga.* 585; Hadley *v.* Baxendale, 9 Ex. 341, 23 L. J. Ex. 179, 18 Jur. 358, 26 Eng. L. & Eq. 398. The plaintiffs can in truth say that the damages set up in the above pleas are not such as would naturally and in the usual course of things flow from a breach of his obligation; nor were they in his contemplation when the contract was made. See *Stewart* v. *Lanier House Co.,* 75 *Ga.* 583; Frye *v.* Maine R. Co., 67 Me. 414; Fox *v.* Harding, 7 Cush. (Mass.) 516, 522. It must be borne in mind that while the plea does allege that the builder knew at the time he signed the building contract that the building had been leased to the Tennessee Fertilizer Company, it is not stated that the plaintiff had any knowledge of that stipulation in the lease contract as to the payment of freight. So far as appears from the allegations of the plea, the builder was not even aware that the alleged lessee had a plant at Montgomery, Alabama. "Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from the breach of a contract under those special circumstances, so known and communicated. . . Had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be unjust to deprive them." Hadley *v.* Baxendale, supra. Before damages are recoverable when they flow from independent contracts which the promisee has entered into on the faith

of the promise being kept, it must appear that the promisor knew that a breach of his promise would result in such specific damages to the promisee. 1 Sutherland on Damages (3d ed.), §§ 50-52; 1 Sedgwick on Damages (8th ed.), §§ 149, 159 et seq.; Hammer *v.* Schoenfield, 47 Wis. 455; *Van Winkle* v. *Wilkins,* 81 *Ga.* 93 (12 Am. St. Rep. 299, 7 S. E. 644). The mere fact that the builder had notice of the fact that the building had been leased would not be sufficient to charge him with notice of the clause of the contract as to the payment of the difference in freight rates between Montgomery and Albany. Horne *v.* Midland Ry. Co., L. R. 7 C. P. 583; Sedgwick, ubi supra, § 163. Knowledge that the building has been leased makes the builder liable for the rental value of the property (as was held by the learned judge in the case at bar), during the period of delay, but for no more. 3 Sutherland, supra, § 2130 et seq.; Lloyd, supra, § 41. What we now rule is not in conflict with the cases to which we have been cited. In *Gore* v. *Malsby,* 110 *Ga.* 894 (36 S. E. 315), it was held that damages in the nature of expenses necessarily incurred because of the breach of the contract, so, too, profits capable of exact computation, directly due to the breach, and of such nature that they must have been within the contemplation of the parties, are recoverable. To the same effect are the holdings in the cases of *Walden* v. *Western Union,* 105 *Ga.* 275 (31 S. E. 172), and *Van Winkle* v. *Wilkins,* supra. These cases are rather in harmony than in conflict with what we have above stated. Compare Masterton *v.* Mayor of Brooklyn, 7 Hill (N. Y.), 62 (42 Am. D. 48).

Certainly it follows, from the rules we have discussed above, that interest on the sum invested was not a proper item of damage in this case. Such an item would not put the promisee in the position he would have been in if the promise had been kept; nor could such an item have been in the contemplation of the parties at the time they made the contract. When money is invested in a building, the owner loses rent, and not interest. Interest on the money invested in a building can not be used as a measure of damage in such a case as this, for the rental value of a building is sometimes much less than the interest on the investment, and sometimes far in excess of the legal rate of interest.

4. It is urged, however, that the court erred in striking the portion of the answer setting up the claim for interest during the

period of· delay, for, the following reason: Defendant filed this
portion of its answer by way of amendment, at the December
term, 1906, at which time the court allowed the same, as shown
by the following order entered thereon: "The foregoing amend-
ment being offered by the defendant, the same is hereby al-
lowed, and demurrer thereto overruled." No exceptions pen-
dente lite were filed by the plaintiffs. Subsequently, at the
February term, 1907, the court struck the plea, as appears from
the following order entered thereon: "Upon motion of plaintiffs,
the foregoing plea is hereby stricken." The defendant contends
that, irrespective of the legality of the damages claimed in the
plea, the court having allowed it at the December term and over-
ruled· the plaintiff's demurrer thereto at that time, the judgment
could not at a subsequent term be changed into one disallowing the
plea. We think that this contention is sound. An oral motion
to dismiss the plaintiff's case, because no cause of action is set out
in the petition, may be made at any time before verdict. *Kelly*
v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280); *Capps* v. *Edwards,* 130·
*Ga.* 149. But "where an amendment to pleadings has been, in
term, duly allowed, it is not, after the term has expired, within the
power of the court to revoke the order of allowance and strike
the amendment on the ground that it was in the first instance
erroneously allowed." *McCandless* v. *Conley,* 115 *Ga.* 48 (41 S.
E. 256). The judgment on the demurrer is entirely without the·
power of the judge to review or revise after the expiration of the·
term at which it was granted. *Sims* v. *Ga. Ry. & Elec. Co.,* 123
*Ga.* 643 (51 S. E. 573); *Matthews* v. *State,* 125 *Ga.* 248 (54 S. E.
192); *Dolvin* v. *American Harrow Co.,* 125 *Ga.* 699 (54 S. E.
706); *Kelly* v. *Strouse,* supra. In the present case, however, the
error does not authorize the grant of a new trial; for it appears·
that such error was harmless to the defendant. Every one of the
pleas asserted that there had been an inexcusable delay of about
three months in the completion of the building, and claimed dam-
ages during that time; first, loss of rent; second, loss of profits; and
third, loss of interest. The pleas as to the loss of rent and loss
of profits were allowed and evidence thereunder was presented to
the jury. Now in the first place, before allowing damages under·
any one of these pleas, the jury must have found that there was de-
lay. The evidence on the issue of delay or no delay was all allowed

to go before the jury under the pleas claiming loss of rent and loss of profits. Therefore the striking of the plea as to loss of interest did not preclude the defendant from introducing every particle of its evidence on the preliminary question of delay. Even if this plea had been allowed, the evidence thereunder as to this feature of the case would have been the same; and consequently the finding of the jury as to the question of delay necessarily would have been the same. In the second place, the undisputed evidence at the trial was that the rental value of the property was $3,000 a month; and that the loss of profits was about $12,000 a month. The highest amount claimed under the plea alleging loss of interest was about $1,200 a month. The jury could not have assessed damages during the period of delay actually found for loss of rent, loss of profits, and loss of interest. In the nature of things the defendant could not have lost profits, rent, and interest. Therefore, under the undisputed evidence, the jury must have given the defendant the benefit of a more liberal measure than they could have given it if the plea as to interest had been allowed. It conclusively appears, therefore, that the striking of this plea could not have harmed the defendant; and therefore a new trial will not be granted. *Really Co.* v. *Ellis,* ante (61 S. E. 832); *Southland Knitting Mills* v. *Tennille Yarn Mills,* ante, 753 (62 S. E. 532).

5. This brings us to the motion for a new trial. The defendant challenged one of the jurors on the ground that he was over sixty years of age (which fact was admitted by the juror), and the challenge was overruled. By Penal Code, §973, it is stated that it is a ground of challenge that the juror is over sixty years of age. Looking to the wording of this section and to the act from which it was codified (Acts 1855, p. 229), it is clear that it was intended to apply only to criminal cases. This is conceded to have been the original intention of the legislature, but it is insisted that the codifiers of 1895 have made the section alike applicable to both civil and criminal cases. In the Civil Code, §4452, it is said: "The law in reference to grand and petit jurors; to jury commissioners; to the selection, drawing, impaneling, and other matters relating to jurors; being *in the main* [italics ours] applicable alike to civil and criminal cases, is omitted here, but will be found in the criminal code." The words italicized show that there

was no intention to work a change in the law relating to jurors; and the whole section clearly indicates no more than an intention on the part of the codifiers to eliminate from the code useless repetition. By the act of 1875 (Acts 1875, p. 98), now Penal Code, § 867, it is provided that persons over sixty years of age are exempt, but not disqualified for jury service in both civil and criminal cases. There is an apparent conflict between section 867 and section 973; the latter section is based on a law passed in 1856, and the former on a law passed in 1875; it would seem, therefore, that the later act would control. However, it is not necessary for us to rule upon this. The decision of the Supreme Court in the case of *Carter* v. *State, 75 Ga.* 747, has never been overruled or changed by any act of the legislature. In that case it is held that a person over sixty years of age is exempt, but not disqualified to serve as a juror. The exemption was granted for his own benefit; and if he does not object to serving, there is no reason why the law should disqualify him. This is the general rule. 17 Enc. Pl. & Prac. 1116, 1177.

6. It was conceded that rainy days were to be excluded from the one hundred and twenty working days prescribed by the contract for the completion of the buildings; but it was a sharply contested issue as to how many rainy days there were during this period. One of the defendant's witnesses testified that the entire time lost on account of rain was two and one-half days. One of the plaintiffs' witnesses testified as follows: "I kept a calendar on the wall, and when it rained I marked that calendar; I marked it up until December, and in December the calendar disappeared, and I have got the weather bureau of Albany's reports, and they are right with that calendar, so I have got to the best of my recollection. The weather bureau verified what I had on my calendar; for some cause or other that calendar was taken away from there." The defendant objected to so much of the above evidence as refers to the report of the weather bureau, on the ground that it violates the best-evidence rule. A witness can not prove the contents of a written instrument by parol, but must introduce the instrument itself, if it is in existence and accessible. On the other hand, a witness may testify to any fact which he recollects; and for the purpose of refreshing his memory he may refer to any written instrument which would aid him. Civil Code, § 5284. The only

limitation is that he must ultimately testify from his recollection as thus refreshed. *Shrouder* v. *State,* 121 *Ga.* 615 (49 S. E. 702).; *Lenney* v. *Finley,* 118 *Ga.* 427 (45 S. E. 317) ; 1 Wigmore on Evidence, §758.  It is often difficult to draw the line between refreshing memory from written aids, and testifying to the contents of a written instrument; because when a witness testifies that by referring to a written instrument he recollects a fact, he is indirectly testifying that the fact is contained in such instrument; else how was his recollection refreshed by referring to it? When, therefore, in the present case the witness testified that he had verified his calendar by the report of the weather bureau, and that he remembered there were fourteen rainy days, he does indirectly state that the weather bureau report shows fourteen rainy days.  But in such a case the recollection of the witness, and not the weather bureau report, is the evidence.  When read in connection with the context, the statement of the witness is susceptible of the construction that he recollected that there were fourteen rainy days; this fact having been fixed in his memory because he had kept a record on a calendar, and had refreshed his memory by verifying the calendar with the report. of the weather bureau. "If upon looking at any document he can so refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum was not written by himself, for it is not the memorandum that is the evidence, but the recollection of the witness." Henry *v.* Lee, 2 Chitty, 124.  See Miner *v.* Phillips, 42 Ill. 141; Huff *v.* Bennett, 6 N. Y. 337; State *v.* Lull, 37 Me. 246 ; Bank *v.* Zorn, 14 S. C. 444 (37 Am. R. 733).  The evidence was of that doubtful character which, in our opinion, would legalize its admission and leave its weight for the jury. "Doubtful evidence is to be admitted rather than excluded." *Savannah R. Co.* v. *Flannagan,* 82 *Ga.* 579 (9 S. E. 471, 14 Am. St. R. 183) ; *W. & A. R. Co.* v. *Young,* 83 *Ga.* 512 (10 S. E. 197). "It has long been the rule in this State, when the admissibility of evidence is doubtful, to admit it and leave its weight and effect to be determined by the jury." *Goodman* v. *State,* 122 *Ga.* 111-118 (49 S. E. 922).                                    *Judgment affirmed.*