## 2471. McNAUGHTON v. STEPHENS.

1. The verdict was authorized by the evidence.
2. Some of the damages which the defendant sought to recoup were clearly not within the contemplation of the parties, and, therefore, the court did not err in omitting to refer them to the consideration of the jury.

DECIDED JANUARY 24, 1911.

Distraint: from city court of Swainsboro—Judge Mitchell. January 3, 1910.

*Saffold & Larsen,* for plaintiff in error.

*Williams & Bradley,* contra.

RUSSELL, J. Mrs. Stephens swore out a distress warrant against Dr. W. J McNaughton, claiming $180 as rent,—$135 for the year

1908; and $45 for rent of certain new ground for the year 1907. The defendant filed a counter-affidavit and arrested the proceedings. Thereafter, by various amendments to his counter-affidavit, the defendant undertook to recoup against the plaintiff for damages growing out of her failure to repair the buildings upon the premises, and also for certain sums which he claimed that he had lost by reason of the fact that he could have subrented the property at a profit if the repairs had been made. The contract specified that the plaintiff was to "keep up what repairs on the buildings as are actually necessary." In the trial of the case the judge submitted to the jury the consideration of the damages accruing to the defendant from the failure of the plaintiff to make necessary repairs so far as his use was directly affected, but excluded from the consideration of the jury the fact that the defendant might have subrented the premises at a profit if the repairs had been made. The jury returned a verdict in favor of the plaintiff, for $113, and the trial judge refused a new trial.

We find no error in the trial which would warrant a reversal of the judgment of the lower court. It is stated in the brief that the defendant was forced to amend his counter-affidavit. This can not legally be said to have been the case; because no amendment of the counter-affidavit was necessary, under the ruling in *Johnston* v. *Patterson*, 86 *Ga.* 725 (13 S. E. 17), and cases therein cited. The only real question raised by the record is whether the court erred in not submitting to the jury the question as to whether the defendant was entitled to recoup, as a part of his damages, profits which he might have made by subrenting the place in the years 1907 and 1908. In determining this question it is to be conceded that the plaintiff was bound to make such repairs on the buildings as were actually necessary; and, while the evidence is conflicting, we will assume that the plaintiff did not make all the needed repairs. We may safely assume this because it is evident from the fact that the jury only allowed plaintiff $113, instead of $180, which she claimed, that they made a deduction of $67 for the injury which the defendant had suffered by the plaintiff's failure to make repairs. We think this was sufficient reduction, when it was within the power of this defendant as a tenant to have had the repairs made himself, and set off the necessary expense against his landlord's claim for rent; and it was his duty, as the damages were consequent upon a

breach of the contract, to have used ordinary care and diligence to lessen his damages as far as practicable. Civil Code of 1895, §§ 3802, 3806. Furthermore, it does not appear by any definite testimony what was the rental value of the stables and barn which the defendant rented from the plaintiff, and which the defendant claimed the plaintiff failed to repair; and this, after all, was the measure of the defendant's damages due to the plaintiff's failure to repair, because the contract did not require the plaintiff to build additional barns, but only required her to repair such buildings as were in existence at the time the contract was made. The defendant has not shown injury in the verdict rendered against him, even if there be error,—because by the verdict of the jury he was only required to pay the plaintiff $113 for the year 1908, and subrented the premises for that year, as well as for the year 1907, for $175,—unless he is entitled to recover as damages larger profits which he might have made by subrenting the property if the repairs had been made. It is for this reason that we stated above that the only real question in the case is whether the judge erred in excluding from the jury the consideration of the profits which the tenant might have made by subrenting the property. In other words, were such damages too remote to be the basis of recovery? We think so. Contracts must always be construed with reference to the intention of the parties at the time of entering the contract, and the damages arising upon a breach of the contract, unlike damages arising from torts, are limited to such results as are within the contemplation of the parties. It is in evidence in this case that the defendant rented this plantation for agricultural purposes, —to farm. For several years covered by the contract he did farm it himself. It seems that the rental that he was to pay under the contract was so low that others were anxious to take his place under the contract, at an advanced figure, and there is some testimony to the effect that with certain improvements the place could have been subrented for $225 a year, whereas the plaintiff was to receive for the plantation (outside of the 15 acres of new ground which the defendant cleared and used free for three years) only $90 per annum. We think it evident that, at the time the contract was made, a subrenting of the premises was not within the contemplation of the parties, and therefore it follows that any damages arising from a breach of the contract, as a result of the fact that the defendant

would not be able to subrent the property as advantageously if the plaintiff failed to make necessary repairs as if she did, were not in the contemplation of the parties. It is evident from the reading of the contract, which the court was bound to construe, that McNaughton intended at that time to farm the premises himself, and that Mrs. Stephens understood that to be his intention. Her obligation imposed upon her the duty of making certain repairs, and any damages that might result to McNaughton in his use of the property, by reason of her failure to make repairs, and connected with his occupation of the premises as a farmer, were recoverable, but the contemplation of the parties did not include profits that McNaughton might make by trading upon the contract. The rulings in *Walden* v. *Western Union Telegraph Co.,* 105 *Ga.* 275 (31 S. E. 172), *Western Union Telegraph Co.* v. *Fatman,* 73 *Ga.* 286 (54 Am. R. 877), and *Van Winkle* v. *Wilkins,* 81 *Ga.* 93 (7 S. E. 644, 12 Am. St. R. 299), do not conflict with what is ruled in this case. The present case is similar to that of *Albany Phosphate Co.* v. *Hugger,* 4 *Ga. App.* 776-778 (62 S. E. 533). It is true that it is generally a question of fact, for the determination of the jury, as to what is included within the contemplation of the parties at the time the contract is made, but we can not hold that in the absence of any direct evidence upon that point, and in the absence of any request that the jury's attention be called especially to the question of any anticipated profits as an element of the defendant's damages in this case, that the rights of the defendant in this case were prejudiced.

As we stated above, there is no view of the evidence which would have entitled the plaintiff to recover less than she did, unless the jury had taken the defendant's view that the 15 acres of new ground were included within the contract; and as to this there was a conflict in the evidence.          *Judgment affirmed.*