47475. CONCRETE MATERIALS OF GEORGIA, INC.
v. SMITH & PLASTER COMPANY OF GEORGIA.

818

ARGUED SEPTEMBER 15, 1972—DECIDED JANUARY 5, 1973.

*Mitchell, Pate & Anderson, Paul H. Anderson, Charles F. Hicks,* for appellant.

*Smith, Currie & Hancock, Bert R. Oastler,* for appellee.

EBERHARDT, Presiding Judge. ■ The lease contract called for and contemplated completion and delivery of the building by Lurlee, the owner, to Scott-Foresman, the lessee, on March 1, 1969, "or as soon thereafter as the building to be constructed by the lessor ... can, with due diligence on lessor's part, be completed in accordance with the Plans and Specifications."

Plaintiff, the prime contractor, asserts that the building was not so completed and delivered until some four months after the date contemplated by the lease and that as a result the owner lost four months of rentals which the owner has back-charged to plaintiff by deducting the amount from its final payment under the construction contract.

The defendant, subcontractor, contends that the deduction of the rentals by the owner-lessor was illegal and cannot be passed on even if defendant was the cause of the delay in completion because of the provision in the prime construction contract that: "The work to be performed under this

contract shall be commenced within ten days of notice to proceed and completed within 150 days. Work must be completed by March 1, 1969, as tenant must vacate present facilities. Liquidated damages of $4,400 plus costs will be assessed." Defendant's position is that the damages for delay could in no event exceed $4,400.

If this were a proper and lawful limitation as to the amount of damages which the owner might recover from the prime contractor, we would agree that he would be thus limited as to recovery against his subcontractor, for otherwise it would enable the prime contractor unjustly to enrich himself by recovering damages which he had not, in fact, suffered.

But, as we view it, this provides a penalty within the contemplation of *Code* § 20-1403, for the amount of actual damages is readily capable of computation, and, additionally, the provision "plus costs," whatever that may mean, rendered it uncertain. Consequently, we doubt that it is sustainable under *Code* § 20-1402. Certainly the damages for loss of rentals are directly dependent upon the element of time. See *Florence Wagon Works v. Salmon,* 8 Ga. App. 197 (68 SE 866).

The lease provision postpones the time for completion and delivery of the building if it appears that "with due diligence" the contractor was unable to follow the plans and specifications and meet the March 1 schedule. Elements of weather, strikes, inability to secure the necessary materials or labor, etc., are to be considered. Whether there was "due diligence" by the lessor in getting construction completed is a jury issue.

Assuming that the evidence fully authorizes a finding that neither the lessor nor the prime contractor has been responsible for the delay (there is much conflicting evidence on the issue), and that the whole responsibility for the delay is chargeable to the subcontractor (about which there is much conflicting evidence), it appears from the testimony of the manager of Scott-Foresman, the lessee, that the warehouse portion of the building was available to and was used

by it for the intended placing of books and supplies therein from early May. Scott-Foresman says that it had a security guard there to protect its stored property from May 5. And the manager also testified that the office portion of the building became available and they moved their equipment into it "around June 12." The specified rental of $4,400 per month included both the office and the warehouse space. Consequently, it appears that the lessee was liable for the reasonable rental of the warehouse from the time it became available, and for the whole rental when both portions became available. Whether the owner-lessor in fact collected from that time or from some other time is of no concern to either the prime contractor or the subcontractor. It is clear that the owner could not hold them as sureties on the lease, and that the only allowable damages for loss of rentals is from the time the building was promised—March 1, 1969, or such later time as may, under the evidence, be an excusably postponed date—until the building or portions of it became available and the lessee entered under the lease. In no event was the warehouse rental loss recoverable beyond the time from March 1 to the early part of May, when Scott-Foresman began its use, and likewise, the loss of rentals for the office portion was, in any event, only from March 1 to June 12. Since the lessee entered at times other than the first of the month, the rentals should be apportioned, and there should be an apportionment as between the warehouse and the office, applying the respective costs to the rental formula in the lease, in order to arrive at a proper amount representing loss of rentals as an item of recoverable damages.

"Where a builder agrees to erect a building within a certain time, knowing that it has been leased from the time named for its completion, and breaks the stipulation as to time, he is ordinarily liable to the owner for loss of rent, but not for loss of interest on the capital invested in the building, nor for damages paid by the owner to a lessee in accordance with a stipulation in the lease contract, as to which the builder had no knowledge." *Albany Phosphate*

*Co. v. Hugger Bros.,* 4 Ga. App. 771 (3a) (62 SE 533).

It is clear that the defendant knew that the building was being constructed for leasing to Scott-Foresman, for in communications from it to plaintiff, beginning September 30, 1968, and continuing until the work of the subcontractor was completed it is referred to as the "Scott-Foresman Warehouse job." It is not contended that the $4,400 per month rental is unreasonable. Thus, we conclude that plaintiff is entitled to recover an amount equivalent to the *rentals actually lost due to delay on the part of the defendant in completing its work on the building.* If the delays are attributable to other causes, but in part to the delay of the defendant, the loss should be properly apportioned. In no event should the plaintiff recover damages for delay attributable to it. Enumerations of error 1 and 3 are without merit.

■ Enumerations of error 2 and 4 raise the issue of whether the expenses of Scott-Foresman incurred because the premises were not ready at the agreed time were too remote for recovery by the prime contractor against his subcontractor. The law is clearly stated in *Albany Phosphate Co. v. Hugger Bros.,* 4 Ga. App. 771 (3a), supra, where it is held that the contractor was not liable "for loss of interest on the capital invested in the building, *nor for damages paid by the owner to a lessee in accordance with a stipulation of the lease contract, as to which the builder had no knowledge.*" (Emphasis supplied.) Accord: *Brockman v. Rhodes,* 33 Ga. App. 435, 436 (127 SE 153), where we held that the expenses of paying a manager and clerks whom the tenant had employed to begin work on the date the building was to be completed and delivered to it are too remote and not recoverable. See also *Sanford-Brown Co. v. Patent Scaffolding Co.,* 199 Ga. 41 (33 SE2d 422), where there was a similar ruling.

We have read carefully the lease between the owner, Lurlee, Inc., and the lessee, Scott-Foresman, and we can find no provision in it under which the owner could be held for or charged with the items of damage on which the lessee

made claim against the lessor and for which the owner-lessor backcharged Smith & Plaster, Co., and which Smith & Plaster, Co. now seeks to recover from the subcontractor, Concrete Materials of Georgia, Inc. If, as was the case in *Albany Phosphate Co. v. Hugger Bros.*, 4 Ga. App. 771, supra, there could be no recovery against a contractor who had no knowledge of provisions in a lease by which the lessor became liable for items of expense due to delay in delivering the building, there can be none where no such provisions exist.

It was held in *Albany Phosphate Co.* that the items claimed could not be said to have been in the contemplation of the parties to the construction contract, and that they were too remote for recovery. Some of them consisted, for example, of increased freight charges due to the necessity of shipping goods to Montgomery, Alabama, where the tenant had another plant, rather than to Albany. We can see no difference in this and in the demurrage charges, etc. here.

It is to be noted, too, that in *Albany Phosphate Co.* the action was between the owner-lessor and the builder. If, as to the builder, remoteness was fatal as to this type of damages, certainly it is fatal as to a subcontractor, who stands once further removed from the tenant as well as from the owner. These enumerations are meritorious.

■ An item of damages sought to be recovered of the subcontractor is the cost of replacing a delivery and access road so that the subcontractor might move its heavy machinery in and out of the job. The subcontract required that plaintiff provide "stabilized roadways or approaches to points of delivery located otherwise than on paved streets, and to provide access inside and outside the structure," and further that the subcontractor "reserves the right to stop deliveries and/or erection if roadways or approaches are such that its vehicles, including cranes, cannot travel under their own power." The subcontractor's job foremen or superintendent made reports to the office as the work progressed. Many of them show conditions at the site to be "soft," or

"soft and muddy," or "muddy," and a number of them indicate cloudy and rainy conditions.

It is the plaintiff's position that his obligation was to prepare for the subcontractor a "stabilized roadway" from the paved road to the job site *one time only*. It asserts that because of the interrupted and intermittent manner in which the sub-contractor worked the roadway deteriorated and that it became necessary five times to haul and place fresh soil on it and tamp it down to restabilize it, and that the cost of this work is chargeable back to the subcontractor.

We do not agree that the plaintiff was obligated, under all conditions, to provide a stabilized roadway only one time. If restabilization became necessary because of conditions beyond the control of the subcontractor, such as weather, we think the prime contractor must nevertheless do whatever may be necessary to provide the stabilized roadway for use in moving the subcontractor's equipment onto, in and around the job site in performing its work. If, on the contrary, the subcontractor without justification abandoned or interrupted its work and allowed a deteriorated condition to obtain when it could, by due diligence, have completed its work before the deterioration occurred, we think the subcontractor may be held for the cost of restabilizing the roadway. This raises factual questions which can be resolved only by the jury, for the contract is silent on the matter of maintenance. Ordinarily the duty of maintenance devolves upon the party who is required to build or provide the roadway and to excuse himself therefrom he must show that the restabilizing was required because of some fault of another. In any case he must repair deterioration due to normal and ordinary use so long as the roadway is required to enable the subcontractor to perform his contract.

■ Where the damages sued for are unliquidated the jury is not authorized to award interest eo nomine but may include it, if they think proper, in the amount of the damages. *Benton v. Roberts,* 41 Ga. App. 189 (5a) (152 SE 141). The court erroneously instructed the jury, if they found for

the plaintiff, to find a sum certain "plus legal interest from, and give the date." The jury found interest from September 23, 1969, and this is incorporated in the judgment. This figure is legally unjustifiable, and can not stand.

5. The evidence is undisputed both that the contract required the defendant's invoices to be paid 30 days from receipt of charges for work substantially completed, and that invoices were not paid within this time. The defendant requested an instruction to the effect that should the jury find this to be a material obligation of the contract this would constitute a bar to the plaintiff's recovery. The request is inaccurate as a matter of law. The true rule is as set out in *Phosphate Mining Co. v. Atlanta Oil &c. Co.,* 20 Ga. App. 660 (1) (93 SE 532), that is, where, in a continuing contract, one side refuses to perform, the other may accept the tender of the breach of contract, refuse to perform further and sue for damages, but if he does not do so the contract continues in effect as to the obligations of both parties. The failure to make timely payment of the invoices appears to have been the result of a running battle as to what work had been substantially completed and to whom delays in performance were attributable; the defendant, if this was a tender of breach, did not accept it as such but continued with the contract, and mere proof that the invoices were not paid within 30 days of receipt would not result in a judgment being demanded in favor of the defendant.

*Judgment reversed. Bell, C. J., Hall, P. J., Pannell, Quillian and Stolz, JJ., concur. Deen, Evans and Clark, JJ., dissent.*

DEEN, Judge, dissenting. Under the testimony here which shows that the defendant was cognizant of the purpose for which the building was erected, it could reasonably anticipate that damages would result from delay in completion. The court specifically instructed the jury that, even though they should find the defendant breached its contract, if the damages sought to be recovered were not such as contemplated when the contract was made as the probable result

of a breach, the defendant would not be liable. The evidence establishes that Lurlee and Scott-Foresman entered into a settlement agreement in which this element of damages was a factor, and that Lurlee backcharged its losses against Smith & Plaster from the amounts owing for the building contract. In my opinion these issues were properly submitted to the jury.

I am authorized to state that Judges Evans and Clark concur in this dissent.