MAYHEW & ISBELL LUMBER CO. v. VALLEY WELLS TRUCK GROWERS' ASS'N et al.  (No. 6226.)

(Court of Civil Appeals of Texas.  San Antonio.  Nov. 12, 1919.)

1. ASSOCIATIONS ⊕⇒20(1) — STATUTORY PERMISSION TO SUE IN ASSOCIATION NAME.

The statute which permits an unincorporated association to sue or be sued in its association name does not undertake to change the legal status of the association, or in any way affect the law in so far as it relates to contract, but is intended merely to furnish a convenient method of conducting suits.

2. APPEAL AND ERROR ⊕⇒1039(3)—HARMLESS ERROR IN MISJOINDER OF ACTIONS.

In an action by individual members of a truck growers' association, error, if any, in permitting members who suffer damages, because of the failure of defendant to furnish onion crates, to join their several causes of action, and to permit all members to join in with a joint cause of action, held harmless.

3. ACTION ⊕⇒50(3) — JOINDER OF SEPARATE AND JOINT CAUSES OF ACTION FOR BREACH OF CONTRACT.

Where the members of a truck growers' association had contracted in the name of the association with defendant for a certain number of onion crates, without specifying how many crates each member was to receive, the members who suffered damages because of defendant's failure to furnish a sufficient number of crates could properly join their several causes of action, and also join in a joint cause of action in the name of the association.

4. JUDGMENT ⊕⇒240 — JOINT JUDGMENT ON SEPARATE CAUSES OF ACTION ERRONEOUS.

Where members of a truck growers' association brought action joining the association for defendant's breach of contract to furnish onion crates, each member having a separate cause of action, a joint judgment was improper; since each member separately should have been awarded such damages as he proved.

5. SALES ⊕⇒23(3)—COMPLETION OF CONTRACT.

A contract for the delivery of onion crates to the members of a truck growers' association, prepared by a representative of the association, accepted by the manufacturer, and delivered to the association's representative, who thereupon made a partial cash payment, held to constitute a complete contract.

6. EVIDENCE ⊕⇒158(27)—ORIGINAL CONTRACT WITHIN BEST EVIDENCE.

In an action by members of a truck growers' association for breach of a contract to furnish onion crates, the written, signed, and accepted contract itself was the best evidence as to the number of crates to be delivered and as to the time of delivery.

7. CONTRACTS ⊕⇒10(4)—MUTUALITY OF CONTRACT FOR SALE OF ONION CRATES OPTIONAL IN PART.

Where members of a truck growers' association entered into a contract for the purchase of onion crates, whereby the first consignment of crates was paid for in cash, additional crates to be paid for at a named figure, the contract, not being separable, and the cash payment being not merely the payment of a pre-existing obligation but a consideration supporting the entire order, was not void for want of consideration and lack of mutuality regardless of whether it was optional with the truck growers to take additional crates.

8. SALES ⊕⇒1(4)—CONTRACT FOR PURCHASE OF ONION CRATES NOT UNCERTAIN AS TO NUMBER.

Where members of a truck growers' association ordered onion crates under a contract providing for a cash payment of the first consignment, additional crates to be furnished "as needed to pack their 1917 onion crop in," the contract was not void, because of uncertainty as to the number of crates to be furnished; the maximum being fixed, as the amount needed for the crop.

9. EVIDENCE ⊕⇒420(3)—PAROL EVIDENCE TO INGRAFT CONDITION UPON WRITTEN CONTRACT.

Parol testimony is not admissible to ingraft a condition upon a plain contract.

10. SALES ⊕⇒81(1)—TIME OF DELIVERY AS ESSENCE OF CONTRACT.

Time is of the essence of a contract between truck growers and a manufacturer to furnish a sufficient number of onion crates to market a designated crop of onions.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

11. SALES ⬳179(3)—WAIVER OF DELAY IN DELIVERY BY ACCEPTANCE OF GOODS ORDERED.

In an action for breach of contract to furnish onion crates to the members of a truck growers' association to harvest a designated crop of onions, acceptance of crates after the time when damages were suffered by plaintiff because of defendant's failure to furnish crates held not a waiver of the breach of contract, where such crates had been continually demanded.

12. SALES ⬳176(1) — INFERENCE OF INTENTION TO WAIVE BREACH OF CONTRACT.

The question of waiver of breach of sale contract is mainly one of intention, and such intention cannot be inferred from acts performed under circumstances such as renders the acts involuntary or compulsory.

13. SALES ⬳174—DEFAULT OF BUYER AS EXCUSE FOR SELLER'S BREACH.

In an action by truck growers for breach of contract to furnish onion crates, failure to make a partial payment for crates received after breach by defendant held not to excuse such breach on defendant's part.

14. SALES ⬳172—RESALE OF SOME OF ARTICLES FURNISHED AS EXCUSING FAILURE TO DELIVER BALANCE.

Where a contract to furnish onion crates to the members of a truck growers' association merely obligated defendant to deliver such crates as were needed for the crops of the members of the association, and did not prohibit resale, that some of the crates were disposed of to a nonmember for the use of his tenants who were members did not constitute a breach excusing seller's failure to deliver remainder of crates contracted for.

15. SALES ⬳417—EVIDENCE AS TO DAMAGE IN BUYER'S ACTION FOR BREACH.

In an action by members of a truck growers association for breach of defendant's contract to furnish crates in which to market their 1917 crop of onions, the crates to be furnished as needed, where defendant contended that, by a more judicious distribution of crates received among the members, damages arising from failure to deliver balance of crates could have been lessened, evidence held not to show an improper distribution of the crates.

Appeal from District Court, La Salle County; Covey C. Thomas, Judge.

Action by the Valley Wells Truck Growers' Association and others against the Mayhew & Isbell Lumber Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Martin & Martin, of Uvalde, Templeton, Brooks, Napier & Ogden, of San Antonio, Vandervoort & Johnson, of Carrizo Springs, and John W. Willson, of Cotulla, for appellant.

W. H. Davis, of Crystal City, and Arnold & Cozby, of San Antonio, for appellees.

MOURSUND, J. In stating the case we avail ourselves, to a large extent, of the statement in appellant's brief:

"This suit was brought in the district court of Dimmit county, Tex., by the Valley Wells Truck Growers' Association and J. T. Baber, G. B. Penn, Alfonse Dauwe, O. A. Hiatt, Peter Hooge, C. P. Hooge, L. W. McCarley, Pol Michiels, H. D. Martin, W. B. McCarley, F. M. McCarley, B. F. McCarley, Leon McCarley, William O'Brien, S. J. Potter, J. F. Storoszyoszyn, Peter Storoszyoszyn, O. Vande Walle, Peter Vande Neut, Hector Williams, W. S. Wilburn, A. A. Hussey, I. H. Warren, C. H. Moore, Louie Kurianski, W. A. Jones, Frank Wolverton, W. A. Shumate, P. D. Woolwine, and A. H. Rife, as plaintiffs, against the Mayhew & Isbell Lumber Company, a corporation, as defendant. It was alleged that the association was organized and conducted for the mutual profit of its members, consisting of the aforesaid 30 individual plaintiffs; and it was also alleged that the association constituted a partnership composed of its said members. The association sued in its own behalf and also in behalf of its members. The suit was to recover damages in the sum of $29,710.00, alleged to have been sustained by reason of the breach by defendant of its contract to furnish plaintiffs with crates in which to pack their onion crops for 1917. The cause of action alleged by plaintiffs in their second amended original petition, on which the case was tried, is this:

"That plaintiffs are engaged in the business of growing onions for the market, and that in the spring of 1917 they had about 200 acres planted in onions, which they estimated would produce 300 bushels to the acre. That the onion is a perishable vegetable, which must be harvested as soon as same is matured in the field, and then packed in bushel crates and marketed at once, or same will deteriorate, rot, etc. That onions mature in that section from April 15th to May 15th. That, in order to be assured of crates in which to pack and market their said crop, plaintiff approached defendant on or about March 16, 1917, and told defendant that they would need 60,000 crates or more in which to hold, harvest, and sell their said crop, and that they would begin digging and crating about April 20th, and that they desired to buy crates, not as merchants or dealers to sell upon the market, but for the purpose of packing, harvesting, and selling therein their said crops. That 'the defendant on or about March 16, 1917, and on or about March 22, 1917, accepted an order from the plaintiffs for 60,000 bushel onion crates to be used by plaintiffs to pack, harvest, and market their 1917 crop in, and contracted and agreed to deliver to the plaintiffs immediately, f. o. b. Las Vegas, Tex., 30,000 Cummer pine onion crates, and further agreed to furnish the plaintiffs such additional Cummer pine onion crates, delivered f. o. b. Las Vegas, Tex., as needed by the plaintiffs to pack their 1917 onion crops, and the defendant agreed to sell these crates to the plaintiffs for the purpose of being used to pack their 1917 crop therein, at a price of 15 cents each, cash, or 15½ cents payable as the

onions were sold, and as a further consideration for said contract the defendant required of the plaintiffs that they pay on the purchase price of said onion crates $4,500.00 in cash, which cash payment the plaintiffs made in accordance with said contract, and the said contract was, on March 22, 1917, reduced to writing, and said contract was the joint contract of the plaintiffs with defendant.'" The contract then set out is copied in the findings of fact.

"The plaintiffs further alleged that by said agreement and in consideration of said cash payment, as hereinabove set forth, the defendant contracted and agreed to immediately deliver to the plaintiffs 30,000 Cummer pine onion crates, and agreed to furnish the plaintiffs such additional Cummer pine onion crates as they may require as needed to pack their 1917 onion crop, for the consideration of 15 cents per crate cash, or 15½ cents per crate when the onions are sold. That defendant knew all said facts, and knew that an unusually large onion crop was being raised in Texas in 1917, and that there was a scarcity of onion crates, and that the early onions to reach the market would command a higher price than those reaching the market later, and that plaintiffs would be unable to procure crates anywhere else in the event defendant failed to furnish same in accordance with said contract. That plaintiffs' said crop consisted of 60,446 bushels, and was matured in the field and ready to harvest on or before May 10th. That, had defendant complied with its contract and furnished said number of crates (60,446) to plaintiffs on or before said date, they could and would have marketed their entire crop on or before May 20th at $1.50 per bushel. That defendant furnished plaintiffs the first 30,000 crates in time, and plaintiffs marketed 30,609 bushels of their crop without loss. That defendant furnished plaintiffs 4,000 crates about May 20th and 4,000 more about May 27th, which were used by them; but that same were not furnished in time, and were furnished so late that the onions packed therein were damaged so that same had to be sold at a loss. That defendant thereafter furnished plaintiff 4,000 more crates, but same were delivered so late that they could not be used on account of plaintiffs' crop being entirely ruined when same were received. That defendant never furnished plaintiffs any more crates. That plaintiffs sold 17,322 bushels of damaged onions at a loss, and that the remainder of their crop (12,515 bushels) was a total loss. That plaintiffs 'frequently and constantly, to wit, every day from the time of entering into said contract until said onion crop was completely destroyed, * * * demanded crates of the defendant.' That they made every effort to get crates from other sources, but were unable to do so. That, by reason of the deterioration and destruction of their onions and the decline in the market price, due to defendant's failure to furnish crates in time and in accordance with said contract, plaintiffs were damaged in the net sum of $29,710.00, which damages were reasonably in contemplation of both plaintiffs and defendant at the time said contract was entered into as a probable result of the breach of said contract by deefndant. That said onion crops of plaintiffs were owned, raised, and harvested by

the individual plaintiffs separately, but that the seed were obtained for them by the association, and the association looked after the marketing of the crops of its said members and purchased the crates in which to market same. That all the members were interested in the crop of each member, in that by the arrangements for seed, crates, packing, marketing, etc., a uniform pack and grade were secured and better prices obtained. That the contract to purchase crates from defendant was a joint contract and joint enterprise of all the plaintiffs. The petition and exhibits attached thereto' show that there was no loss or damage to the crops of 10 of the individual plaintiffs. The exhibits show the acres planted in onions by each of the 20 individual plaintiffs who suffered damage to their crops, the number of bushels raised by each, the number of crates received by each in time and on which no loss was suffered, the number of bushels raised by each on which a loss was sustained, and the amount of loss sustained on the crop of each."

The defendant interposed pleas of misjoinder, a general denial, and a special denial under oath of the partnership. In addition, it pleaded various matters of defense which will be sufficiently disclosed in the discussion of the assignments of error.

"The plaintiffs, by supplemental petition, pleaded that defendant dealt with them as an association in the making of the alleged contract, and was estopped from denying their right to sue jointly as an association and as joint participants in a joint venture; to which plea defendant interposed a general denial. The plaintiffs, by trial amendment, pleaded that the alleged written contract sued on was accepted by them, and they became bound to purchase from defendant the crates needed by them to pack their 1917 crop in and pay therefor the stipulated purchase price, and became bound to accept from defendant and pay for the said 60,000 crates ordered by them from defendant as set forth in their petition, all of which defendant agreed to do. The defendant, by trial amendment, pleaded that all the crates furnished by it were not used for the purposes for which same were furnished, but that some of them were diverted from that use, to wit, about 2,000 of the said crates so furnished by defendant were sold to one Hendrickson, or were turned over to and used by him on terms unknown to defendant, and that this constituted a breach of the alleged contract, and that a part of the alleged damages was caused by reason of said crates not being used for the purposes for which same were furnished, to which plea plaintiffs interposed a general denial."

The venue was changed to La Salle county. The pleas of misjoinder were tried with the case on the merits and overruled. Judgment was entered for plaintiff association for and in its own behalf and in behalf of 20 individual plaintiffs for $6,870.15; also, for said 20 individual plaintiffs jointly for said sum of $6,870.15; and against 10 of the individuals who were plaintiffs.

The findings of fact and conclusions of law are as follows:

"Findings of Fact.

"(1) The Valley Truck Growers' Association on March 22, 1917, entered into a written contract with the Mayhew & Isbell Lumber Company, which contract was as follows:

" 'Big Wells, Tex., March 22, 1917.

" 'This is to certify that we have received of the Valley Wells Truck Growers' Ass'n, through their agent, A. H. Rife, four thousand five hundred ($4,500) dollars as payment in full for 30,000 Cummer pine onion crates now in transit for immediate delivery f. o. b. Las Vegas, Texas.

" 'In consideration of the above payment in cash, we agree to furnish the Valley Wells Truck Growers' Assn. of Valley Wells, Texas, such additional Cummer onion crates as they may require delivered f. o. b. Las Vegas, Texas, as needed to pack their 1917 onion crop in at 15 cents each cash or 15½ cents payable as onions are sold.

" 'Mayhew & Isbell Lumber Co.,
" 'By [Signed] R. C. Nipper.'

"(2) At the time of and before entering into this contract, the Mayhew & Isbell Lumber Company knew that the crates called for in the contract were being purchased for a special purpose, namely to enable the members of the Valley Wells Truck Growers' Association, whose names are set forth in the petition, to harvest and market their 1917 onion crop, that as many as 60,000 crates in all might be required for such purpose, and that a crate contains one bushel.

"(3) At the time of and prior to entering into said contract, the 1917 onion crop referred to was planted on approximately 200 acres of ground and, when matured, partly in April and partly in May 1917, consisted of approximately 58,000 bushels of marketable onions.

"(4) The defendant breached its contract in that it failed to deliver 24,000 crates in time, to wit: On or before May 24, 1917, which is the date the court finds was the date for such delivery in the reasonable contemplation of the parties at the time said contract was made on March 22, 1917. Had the 24,000 crates been delivered on May 24th, the onions could have been packed therein and put on the market and sold May 30–June 4, 1917.

"(5) As a result of such breach of contract, a loss was suffered by plaintiffs, in that 11,000 bushels of onions were not harvested and marketed at all and 13,000 bushels were marketed at a loss.

"(6) The amount of the damages suffered by plaintiffs as a result of the defendant's breach of said contract was $8,070.15.

"(7) Defendant is entitled to a credit of $1,200.00 to be deducted from amount of said damages as plaintiffs admit they owe defendant that much money for 8,000 crates delivered and not paid for.

"(8) The defendant on or before March 22, 1917, knew that an onion is a perishable vegetable, that plaintiffs had a healthy growing crop which would mature and be ready for market in the latter part of April and during May, 1917, and that the crop might aggregate as much as 60,000 bushels of onions, and knew from the government reports that an unusually large onion crop was in prospect, and that there probably would be a shortage of crates, and defendant knew all set out in this paragraph at and before the time of entering into the said contract.

"Conclusions of Law.

"1. I conclude that the pleas of misjoinder are without merit and that same should be overruled.

"2. I further conclude that the contract upon which the suit was based is a valid existing contract and that defendant is liable to plaintiffs as set forth in the decree."

The contention that there was a misjoinder of parties plaintiff and causes of action was properly presented, and overruled, and by appropriate assignments of error complaint is made of such ruling. The allegations with respect to the matter, as contained in appellant's second or supplemental plea, are as follows:

"The damages alleged to have been sustained by reason of the alleged breach of contract did not accrue to the alleged association as such, or to the alleged partnership as such, or to the individual plaintiffs as members of said association or partnership, jointly or in common, but to some of the individual plaintiffs in their individual capacity, and there is no common or joint interest in plaintiffs in the alleged damages (especially in the loss and damage to crops) and no community of interest in the plaintiffs in the relief sought, and the only parties interested in the recovery and in the particular loss and damage to crops specially shown by the exhibits to plaintiffs' second amended original petition are the individual plaintiffs, who are alleged and shown by said exhibits to have separately sustained the particular damages shown by the separate exhibits, and such claims for damages do not constitute a single cause of action, but each of them constitutes a separate and distinct cause of action in favor of several persons separately; that several of the individual plaintiffs, to wit, eight of them, have no interest in this suit, and especially that they have no interest in the damages sought to be recovered for the individual plaintiffs as are alleged to have been damaged as particularly shown by the exhibits to said petition; that no such partnership existed as that alleged in said petition, the damages alleged (especially the loss and damages to crops) did not accrue to such partnership or to the members thereof as such, and that the alleged loss and damage to crops did not accrue to said association as such or to the members thereof as such; that no such joint contract or joint enterprise existed as is alleged by plaintiffs in said petition. Wherefore, defendant says that there is a misjoinder of parties plaintiff and of causes of action herein, because of the facts aforesaid, in that the said parties plaintiff cannot be properly joined in this suit on the causes of action herein sued on, and of these things it prays judgment."

[1] The Valley Wells Truck Growers' Association was not engaged in the business of buying and selling crates or raising onions for the joint profit of its members. It owned

no land, and was merely the agency adopted by its members for purchasing seed and crates to be used by the members for the purpose of growing and marketing crops of onions owned by them in severalty. The contract is a peculiar one. It is referred to in appellee's brief as having been made in the name of the association, but the association did not constitute an artificial person, capable of contracting as a legal entity. The statute which permits an unincorporated association to sue or be sued in its association name merely furnishes a convenient method of conducting suits, without undertaking to change the legal status of the association or in any way affect the law in so far as it relates to contracts. The use of the name of the association, therefore, was merely for the purpose of describing, instead of naming, the men whose agent Rife purported to be. The contract is that of the members of the association just as if, instead of the association name, it had contained the names of all of the members. The contract was made for the purpose of procuring crates in which to pack "their 1917 onion crop," and such crates, in addition to the 30,000 recited to be in transit, were to be furnished "as they may require." The words, "their 1917 onion crop," might relate to a crop owned jointly by the members, or might relate to crops owned by them in severalty. Viewed in the light of the fact that the members of the association did not own jointly any land or crops, the words must be construed to relate to the crops held in severalty by the members of the association. The contract, then, may be described as one in which the members of the association bind themselves jointly to pay for such crates as are delivered; but the benefits to be derived from the delivery of the crates are to inure to the members, not jointly, but severally. The damages sought to be recovered are shown by the petition to have been suffered by the members severally, except that it was perhaps intended by Exhibit 21 to show a small item of joint damages. The damages found by the court to have been suffered must have been several in character, for it is provided that only twenty of the members are entitled to recover.

In passing upon the questions relating to misjoinder and the form of the judgment, we take it that the inclusion in the pleadings and the judgment of the name of the association adds nothing, for to say that the association sued and recovered a judgment is equivalent, so far as the questions involved are concerned, to saying that the members of the association have sued and recovered judgment.

[2] If there was a misjoinder in permitting the members who suffered damages to join their several causes of action, and to permit all the members to join in with a joint cause of action, if that be the effect of the allegations and Exhibit 21, the error in permitting the joinder was of such a character as not to require a reversal of the judgment. The trial was before the court, and we are unable to see how the appellant could have been injured by the ruling. Western Union Co. v. Morrow, 208 S. W. 689.

[3] However, we are of the opinion that the actions were properly joined, especially under our liberal practice. If the contract had provided how many crates each member was to receive, there would be good ground for appellant's contention; but the contract leaves the matter of the division of the crates to the members. It follows that if separate suits were brought, and the appellant was unable to procure the consolidation thereof, it might be subjected to recoveries for damages caused by failure to deliver more crates than it was bound to deliver. Each plaintiff would view the matter from his particular standpoint and allege his damages in accordance with his views. Each might sustain his contention, and the result would be binding on appellant, but not on the members not parties to the suit. We think it is obvious that appellant was entitled to demand that all parties claiming damages under the contract should join therein, and, this being the case, it follows that it was proper to permit the joinder. Moore's Adm'r v. Minerva, 17 Tex. 20; Robbins v. Ayres, 10 Mo. 538, 47 Am. Dec. 125.

[4] In this connection, we will take up the objections urged to the judgment, which present a much more serious question. There is a palpable inconsistency in the judgment, in that it awards the sum of $6,870.15 to the association in its own behalf, which means to the 30 members, and also such sum to the association, for the benefit of 20 of the members. This is a matter which could be corrected by this court, but appellant submits the further objection that the causes of action upon which the recovery was awarded are several, and that it was error to award a joint judgment. The court failed to include in his findings of fact the separate items which go to make up the sum awarded. The judgment discloses, however, that the sum awarded is the aggregate of the amounts found to be due 20 plaintiffs on their demands of a several nature. The proper judgment on the pleadings and proof would have been one awarding each member separately such damages as he proved that he sustained, and it was error to add such several damages together and award the 20 plaintiffs a joint judgment for the same. Lancaster v. Riley, 34 S. W. 320; I. & G. N. Ry. v. Reed, 189 S. W. 997.

Appellees do not concede that it was improper to award the 20 members a joint recovery, and call attention to the case of Dunn v. Smith, 74 S. W. 577, in which sev-

eral plaintiffs were permitted to recover jointly for mental anguish. A writ of error was denied (96 Tex. 478, 73 S. W. 945); but the Supreme Court called attention to the fact that only certain specifications of error were contained in the application, and that questions were raised in the Court of Civil Appeals, concerning which the Supreme Court would have had more difficulty had they been presented to that court. A comparison of the opinions leads to the conclusion that the Supreme Court expressed no opinion on the question whether damages suffered by various persons on account of mental anguish could be treated as joint damages in the pleadings and judgment. The decision of the Court of Civil Appeals was referred to in the case of Western Union Tel. Co. v. Morrow, 208 S. W. 689, but for the purpose of sustaining the theory that persons who have suffered mental anguish from the breach of a contract should be permitted to litigate in one suit their causes of action for the damages severally sustained.

., We find no objection to the holding that it is not reversible error to permit the several causes of action to be litigated in the same case, but cannot subscribe to any contention that damages which in their very nature are several in character can be described as joint in the pleadings and permitted to sustain a joint judgment.

In support of the contention that the judgment is proper, or at least the error is harmless, appellees also cite the cases of Murphy v. Gage, 21 S. W. 396; Ry. v. Alexander, 121 S. W. 602; Wheeler v. Hawkins, 116 Ind. 515, 19 N. E. 470; School District v. Edwards, 46 Wis. 150, 49 N. W. 968.

The first-cited case was decided prior to the case of Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528, from which it will be seen that the court erred in the cited case with respect to the nature of the cause of action. However, the court did not hold that a joint judgment would have been proper, but merely that, if it was error to render separate judgments, one of the persons against whom a judgment was rendered could not complain because judgment for the entire amount was not rendered against him and the other surety. It is difficult to conceive of a person being injured by rendering a judgment against him for $100, instead of one under which $200 could be collected from him.

The case of Ry. v. Alexander was an action for damages under the death statutes, and the construction of such statutes furnishes no precedent in this case. The statute treats the sum to be recovered as a fund to be recovered by those who have suffered pecuniary loss.

The case of Wheeler v. Hawkins is one in which a trust fund had been diverted, and the trustee, and those who had acquired an interest therein by subrogation, sued to recover such fund. That the court considered the case as one involving one cause of action for a certain fund is shown by the case cited by it which was one in which the beneficiary and mortgagee sued on an insurance policy. The case of School District v. Edwards was also one to recover a certain fund, the debt being evidence by a duebill directed to be delivered to one of the districts for the benefit of all, the proceeds to be divided in proportion to number of scholastics.

The holdings with respect to the recovery of a fund find their basis in the fact that there is only one cause of action. We find no cases holding that when the causes of action are separate and distinct, being dependent upon different sets of fact, it is permissible to render a joint judgment in favor of the plaintiffs for the aggregate sum of the damages severally suffered upon distinct and separate causes of action.

Appellees make the further contention that the association, because of the fact that the contract recites that it is made by it, is authorized to sue thereon for all damages sustained by reason of its breach, and that therefore the judgment in its favor for the aggregate of the damages is proper. This contention is in effect that all the members may sue to recover the damages suffered severally by some of them, and recover a judgment for the aggregate of the amounts of damages thus severally sustained. One of the principal cases relied upon by appellees is that of Cleveland v. Heidenheimer, 92 Tex. 108, 46 S. W. 30. In that case it was held that if Heidenheimer made the contract on his individual account and transferred a half to Hawley, he could have sued alone, because an assignment of a part interest in a chose in action is not good at common law, and is only good in equity, and therefore Heidenheimer remained the owner of the legal title. It was further held that, if Heidenheimer made the contract for the partnership in the first instance, he could have maintained suit alone, or the partnership might have sued; that the rule of undisclosed principal applied. There being no assignment of any interest in the contract involved in this case, the first rule referred to in the case of Cleveland v. Heidenheimer can have no application. The second rule applies when there is an agent who contracts for an undisclosed principal. This is not such a case, and, if it were, the further rule would apply that when the principal himself sues the agent's right to recover becomes extinguished, for the right of the agent and principal to sue is alternative and not joint. Mechem on Agency (2d Ed.) § 2024; Corpus Juris, vol. 2, § 899.

We are also at a loss to see how the bringing of the suit by an agent could change the nature of the causes of action upon which he might sue and make joint those which are

several. Appellees also rely upon the cases relating to suits by consignors of live stock upon contracts of shipment. These cases are to a large extent based on the rule permitting the agent to sue in his own name when the principal is undisclosed. Railway v. Stanley, 89 Tex. 42, 33 S. W. 109. However, our courts have adopted a rule with reference to shipment contracts, to the effect that the possessory title of the shipper legally in possession of property is sufficient to authorize the collection by him of the damages growing out of the negligent performance of the contract of shipment. Railway v. Morris, 100 Tex. 611, 102 S. W. 396, 123 Am. St. Rep. 834; Railway v. Dinwiddie, 146 S. W. 281; Railway v. Littlefield (Sup.) 154 S. W. 543. We do not regard those cases as of any assistance in deciding the question whether in this case a judgment could properly be rendered in favor of the 30 members jointly for a lump sum to be held by them for the joint benefit of 20 out of the 30. The owners of the distinct and separate causes of action were parties to the suit, and the proper judgment under the statute and the rules of the common law was one awarding each a judgment upon his cause of action for such sum as he proved himself entitled to.

The suggestion that the rendition of a joint judgment for a lump sum in favor of the plaintiffs who proved up to some extent the several and distinct causes of action alleged by them, if error, constituted harmless error, is without merit. The only argument offered in its support is that it is immaterial to whom appellant pays the money if the judgment bars a subsequent suit. It may become a matter of importance to a litigant to have separate judgments against him, for conditions may arise calling for application of the rule permitting the offsetting of judgments against each other. Regardless of whether any actual injury is shown or probable, the statute requires that a judgment shall conform to the pleadings and the nature of the case proved. This statute confers rights upon both litigants, and when it is violated, as it was in this case, the judgment should be reversed.

As the trial court did not embrace in his findings the items of damages found by him to have been suffered by the 20 plaintiffs, there is no basis for a judgment by this court, and the cause must be remanded. The foregoing conclusions lead us to overrule the first four assignments and also No. 34, and to sustain assignments 31, 32, and 33.

[5] Appellant contends there was no such contract as is relied upon by plaintiffs, the contention being based upon the theory that the instrument copied in the findings of fact and signed by appellant was never accepted by the association. There is no merit in the contention. The instrument was prepared by Rife, who represented the association. It was signed by appellant and delivered to Rife, who thereupon made the cash payment of $4,500. The contract was completed, and the minds of the parties met upon the terms expressed in the writing, which took the place of all previous verbal negotiations. The fifth and sixth assignments are overruled.

[6] It is contended that the undisputed evidence shows that the minds of the parties did not meet with respect to the number of crates defendant was to sell and deliver and the association was to buy and receive, or as to the time when same were to be delivered, and that therefore the court erred in finding that the alleged written contract was a valid existing contract. The contract being in writing and having been signed and accepted, it would seem that it must be accepted as the best evidence concerning the result of the negotiations, and the questions should be directed to its legal sufficiency, and whether, in view of the evidence of what the parties did with respect to the same, the defendant is liable under the terms thereof. We will therefore overrule the seventh and eighth assignments which present the contention above stated.

[7] The appellant by its ninth assignment contends that the contract is void for want of consideration and for lack of mutuality. The theory is that the payment of the $4,500 for the first 3,000 crates which is recited in the instrument sued on as the consideration for the agreement respecting additional crates was simply the payment of a preexisting obligation, which the association was legally bound to satisfy at and prior to the time of the execution of said instrument, and therefore such payment was not a valid consideration for the agreement respecting additional crates, and that the instrument leaves it optional with the members of the association whether or not they will take additional crates, and therefore the part of the instrument relating to additional crates is unilateral.

The negotiations related to 60,000 crates from the start, and the proposition made by Rife was that he would take 30,000 crates for immediate delivery and pay cash for same at 15 cents per crate and 30,000 crates for future delivery at the same price. The appellant wired and wrote Cummer Manufacturing Company of this offer, and upon hearing from said company notified Rife that his proposition would be accepted. Rife, on March 22, 1917, went to appellant's agent and wrote out the instrument relied on as the basis for this suit, and paid $4,500. It is true that at that time the first 30,000 crates were en route, having been diverted from other customers; but the court was authorized to find that there was no separate contract for said 30,000 crates, and that, if appellant had at any time prior to accepting

the written instrument declined to consider the proposition except as to the 30,000 crates for which cash was to be paid, Rife could have declined to accept and pay for said 30,000 crates; that the written instrument was the final agreement in which all negotiations were merged; and that it spoke the truth in stating that the payment of $4,500 cash was a part of the consideration for the agreement to sell crates additional to the 30,000. There being a valid consideration for the agreement with reference to additional crates, it appears to us that it is immaterial in so far as the ninth assignment is concerned that the agreement failed to bind the association to purchase any additional crates, but gave them the privilege of doing so. Roberts v. Anthony, 185 S. W. 423; Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083; R. C. L. p. 686, Contracts, § 93; Corpus Juris, vol. 13, § 183.

The tenth assignment appears to present two theories: First, that the contract is void for uncertainty as to the number of crates to be delivered; and, second, that if not void on its face, it required notice to fix the number of crates, and that the evidence failed to show that the number had ever been fixed by notice.

[8] The language of the contract is not plain. Appellant contends that the word "require" should be given the meaning "demand," and that the contract should be construed to mean that appellant bound itself to deliver such number of crates as plaintiffs might demand, and that this renders the contract void for uncertainty. No contention can be sustained that the association could require the delivery of more crates than necessary for the 1917 crop, but appellant contends that it was left optional with the association to take such number as it might desire not to exceed the number needed for the crop. If this were true, it would not render the contract void, but would leave the number to be fixed by subsequent notice given a reasonable time before the time when the crates would be needed. What we have heretofore said concerning the consideration need not be here repeated. It appears to us to be immaterial whether the contract bound the association to take all the crates needed or only such as they demanded, in view of the fact that the agreement was supported by a valid consideration.

The contention of appellant with respect to the matter of notice of the number of crates needed may be considered in connection with the assignments which deal more specifically with the question. The eleventh and twelfth assignments question the court's finding that defendant breached the contract in that it failed to deliver 24,000 crates in time, to wit, by May 24th; the contentions being, first, that it did not receive any notice at all that such number of crates would be required, and, second, that notice was not given in time to enable defendant to deliver the crates by May 24th. The court was warranted in finding that in addition to demands for crates, apparently indefinite as to number, made prior to April 26th, on that date appellant's agent received definite notice that 30,000 crates were desired in addition to the first 30,000 mentioned in the contract; also, that this notice gave appellant a reasonable time in which to have effected delivery by May 24th.

[9] The contract contains no provision from which any intention can be inferred to make the sale and delivery of crates dependent upon the ability of appellant to procure the crates from the Cummer Manufacturing Company or any one else. Parol testimony would not be admissible to ingraft a condition upon a plain contract. If there had been any ambiguity in the language with respect to the point under discussion, the evidence would certainly support a finding that the contract was made after due inquiry by appellant to satisfy itself of its ability to procure the crates, and that it was intended to be absolute and unconditional. Assignments 13 and 14 are overruled.

[10] We are unable to see any merit in the contention that time was not of the essence of the contract. All of the facts and circumstances show that it was fully understood that the crates were for the purpose of marketing the onions, and that it was desired to market the onions promptly after taking them out of the ground. The fifteenth assignment is overruled.

The sixteenth assignment only embraces contentions already disposed of, and will be overruled.

[11] Appellant contends that, by accepting and using a car of crates received June 5th and accepting a car received June 10th, the association waived the breach of contract by defendant, and also contends by separate assignments that by accepting such crates there was a waiver of the damages suffered by failure to deliver in time the said 4,000 crates delivered June 5th and the 4,000 delivered June 10th. The statement in support of these assignments shows that, after the date found by the trial judge to be the one by which delivery should have been made, Rife received, accepted and used one car of crates, and received and accepted another car; also, that on the following day he telegraphed appellant, "Give us Las Vegas one car crates quick," and on the next day, June 12th, telegraphed appellant that the association could not use any more crates because it was too late to save the balance of the crop.

[12] The evidence discloses that Rife continually demanded crates; that he would not have been justified in waiving the time, as the crops had to be marketed at once; that

it was impossible to get a sufficient number of crates from other sources; that such crates as could be procured were purchased and used; that other containers were purchased and used; that if the crates had not been accepted and used appellees would have been subject to the charge failing to minimize damages. The question of waiver is mainly a question of intention. Intention to waive cannot be inferred from acts performed under circumstances such as render said acts involuntary or compulsory. 40 Cyc. p. 259, 261; Van Winkle v. Wilkins, 81 Ga. 93, 7 S. E. 644, 12 Am. St. Rep. 299. The court was fully warranted in finding that the evidence failed to show a waiver.

The assignments are overruled.

[13, 14] There is no merit in the twentieth assignment, wherein it is contended that the failure to pay for part of the crates, such default occurring after the breach of the contract by appellant, would excuse the breach by appellant, and relieve it from damages suffered by reason of its breach. The further contention is made in the twenty-first assignment that the contract was breached by the association in that it disposed of 2,000 crates out of the first 30,000 to Hendrickson. We are unable to see how there could be a breach of the contract by disposing of these crates. The contract did not obligate appellant to deliver any more crates than were needed for the crops of the members, and, if such a number of crates had been delivered and all had been sold by Rife and none used by the members, appellant would not have been liable for any damages. The contract contains no provision prohibiting resale. In fact, the only contention that could be urged is that certain damages were caused by this resale, and that the same should not be charged to appellant. However, the evidence shows that all of these 2,000 crates were used by members of the association; that Hendrickson bought them for the use of his tenants who were members of the association, and distributed them as they needed them.

[15] The appellant makes the further contention that there was an improper distribution of crates; that is, that by a more judicious distribution as needed the damages could have been lessened. It appears from the statement that the 20 plaintiffs who are alleged to have sustained damages raised 51,081 bushels and only received 21,244 crates of the 30,609 in which shipments were made without loss, while the 10 who suffered no damages raised 9,365 bushels and received 9,365 crates. This alone is not sufficient to show improper distribution. The association could not presume in advance that the contract would be breached, and, so far as is disclosed by the evidence, when it divided out the 30,609 crates, was guilty of no negligence in permitting those who wanted crates

for their entire crops to take them at that time. The contract did not impose the obligation to distribute the crates as received, in proportion to crop estimates. So far as the issue of minimizing damages is concerned, no evidence is pointed out showing that any distribution made after the contract was breached was negligent in that if it had been differently made the damages would have been lessened.

By assignment No. 23 it is contended that defendant was not bound by the contract to furnish crates in which to pack the separately owned crops of the individual plaintiffs. This assignment is overruled. Our views with respect to this point are disclosed in the discussion of the assignments relating to misjoinder, and the form of the judgment.

The twenty-fourth, twenty-ninth, and thirtieth assignments will be considered together. The contentions are: (1) That no judgment should have been rendered against appellant because the undisputed evidence shows that the damages recovered were sustained before May 24th; (2) that the court's fifth finding of fact is not supported by evidence, in that the evidence establishes that the loss and damage accrued in large part (if not entirely) before May 24th, and the balance, if any, would have been sustained in spite of the alleged breach, and could have been avoided by ordinary care and diligence; (3) that the sixth finding is unsupported by evidence.

The statements submitted in support of these assignments merely show that considerable damages accrued before May 24th, and do not point out any evidence showing that the court was not warranted in finding that if delivery of sufficient crates had been made the damages adjudged by him against appellant could have been prevented. The damages were alleged to be $32,002.77, and the court found the amount to be $8,070.15. This may be explained on the theory that an excessive sum was claimed, or on the theory that the court differed with plaintiffs with respect to the date of the breach. The court found that 11,000 bushels had not been harvested and marketed on account of the breach of contract, and that 13,000 bushels were marketed at a loss. No request appears to have been made for findings showing how much was allowed by the court for the onions not marketed, and how much for those marketed at a loss. Perhaps the 11,000 bushels were damaged to some extent by the time they could have been shipped had crates been furnished on May 24th, but we are unable to say that the court did not take such damaged condition into consideration. The court found they could have been sold "May 30–June 4, 1917." No evidence is pointed out in the statements showing what said onions, in their damaged condition, conceding they were damaged, would have brought at

the time when they could have been sold had the crates been delivered on May 24th. As onions were shipped in the crates received June 5th, it may be inferred that some at least were not worthless at that time. There is no contention that the evidence discloses that all onions not shipped by May 24th were worthless, nor does appellant contend that the statement contains all the evidence from which the court might determine whether loss was incurred by the failure to deliver crates on May 24th, and, if so, the extent thereof. Under the circumstances, the assignments must be overruled.

We deem it unnecessary to discuss at length assignments 25, 26, 27, and 28, relating to the issue whether appellant had such knowledge as would make it liable for special damages suffered by the owners of the crops. The evidence was ample to support the findings of the court in so far as they bore materially on the right to recover such special damages as were shown to have been suffered.

The judgment is reversed, and the cause remanded.